(Decided June 16th, 1896).

---

# THE STATE OF MARYLAND, Use of HANNAH JAMES et al. vs. THE COUNTY COMMISSIONERS OF KENT COUNTY.

*Highways—Liabilities of County Commissioners for Non-Repair— Acceptance of Way Acquired by Prescription or Dedication— Public Use of Footway on Private Property—Negligence—Instructions to the Jury—Demurrer to the Evidence—Time of Signing Bill of Exceptions.*

While the public may, as against the owner of the soil, acquire by prescription a right of way, there must be an acceptance by the county in order to make such way a thoroughfare that the public authorities are bound to keep in repair.

Such acceptance may be proved when express by the record, or it may be implied from repairs made or knowingly paid for by the authority which has the legal power to adopt the highway or from long user by the public.

Where there is no obligation on the part of County Commissioners to keep a way in repair, there is no negligence in a failure to repair.

The mere fact that the public have for many years used a footway over private property as a short cut from one point on a public road to another, is not sufficient to authorize the presumption that the same has been accepted by the public authorities as a public way so as to impose upon them the duty of keeping such footway in repair.

Where the public, in order to make a short cut between two points of a curve in a county road, have been accustomed for many years to walk on the surface of a mill-dam and on planks over the waste-gates, the same being private property which had not been accepted as a way by the county, the Commissioners are not bound to keep the dam and planks in proper repair as a public road, and they are not liable in an action for the death of a person who, while crossing the waste-gates, fell into the water and was drowned at a point fifty yards distant from the public highway.

An instruction to the jury that there is no evidence in the case legally sufficient to entitle the plaintiff to recover and that the verdict must be for the defendant, is in the nature of a demurrer to the evidence and is not too general.

A party is not now entitled to require a bill of exceptions to be signed by the Court before the jury leaves the box, as was the case under the Act of 1834, ch. 233, which is no longer in force.  The general rule is that an exception must be taken and noted at the time the ruling is made, but the preparation and signing of the formal bill should be deferred to some more convenient time during the same term of the Court.

Appeal from a judgment of the Circuit Court for Kent County (WICKES and STUMP, JJ.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Hope H. Barroll* and *James P. Gorter* for the appellants.

*Harrison W. Vickers* (with whom was *J. D. Urie* on the brief), for the appellees.

McSherry, C. J., delivered the opinion of the Court.

The declaration in this case alleges in substance and effect that one of the public roads in Kent County, to-wit, the public road which leads from Lankford to Rock Hall was, by the wrongful act, neglect and default of the County Commissioners, suffered to be out of repair and unmended so as to be impassable with safety ; and that Lee James, the husband of Hannah James and the father of Lee and Isaac James, the equitable plaintiffs, in travelling on and over the said road and using due care,. fell into the mill-pond which adjoins said public road and was drowned in consequence of the wrongful neglect of the defendant in not keeping said public road in safe and proper condition.  Upon the conclusion of the plaintiff's evidence the Court, at the instance of the defendant, granted an instruction which withdrew the case from the jury, and from the judgment subsequently entered against the plaintiff this appeal was taken.  The granting of this instruction is the ruling complained of in the first exception.

The evidence shows that in the public road alluded to there is, between Price's or Connelly's Mill and Saint Paul's Church, a considerable bend or curve, which for brevity of description may be likened to the segment of a circle ; that opposite to and distant some fifty or sixty yards, at the farthest point, from the concavity of this curve, there was a mill-dam belonging to and being the property of the owner of the mill, and extending from the mill at one end of the curve to or nearly to a fence surrounding the churchyard at the other end of the curve.  This dam and a footpath connecting with it on the church side of the dam, may be considered the chord of the above-mentioned curve or arc.  In the breast of this dam there were automatic wastegates which worked in frames made of timber, and across the sills forming the tops of these frames loose planks were laid for the convenience of the mill employees when removing brush and other debris as it accumulated and obstructed the free play of the gates.  It further appears that

a prong of Lankford bay extends across the curve in the public road, and that as the tide rises this portion of the road becomes, because inundated, more or less difficult to traverse by persons on foot. In consequence of this and to avoid crossing this prong of the bay, it had been the habit of persons in the neighborhood, for upwards of fifty years past, to leave the public road at the mill on the one side, or near the church on the other side, and to walk on the surface of the dam and on the loose planks over the waste-gates and thus to pass, by a short cut, from one point in the public road to another point in the same road without going around the curve.

About dusk on the evening of January the twentieth, eighteen hundred and ninety-five, Lee James, the husband and father of the equitable plaintiffs, left the vicinity of the church and started for his home on the mill side of the dam. Instead of walking around the curve in the county road he took the shorter cut across the breast of the dam. In an hour afterwards his dead body was found in the dam at the waste-gates, a point distant at least fifty yards from the public highway. One of the sills showed traces of a footprint, and it seems probable that the deceased slipped as he stepped upon the sill and that he then fell into the water and was drowned. This action was brought to recover damages for the death thus occasioned.

It is perfectly obvious that if the place where the accident happened was not a public thoroughfare, or part of a public thoroughfare, which the County Commissioners were under a legal obligation to keep in repair, its disrepair furnishes no evidence of negligence for which the county was amenable. This proposition is so self-evident that its statement is its demonstration. Now, confessedly the man met his death not in the known and established public highway, but upon private property belonging to an individual and located at least fifty yards distant from the county road. To avoid the inevitable result of such a situation—the certain defeat of plaintiff's claim against the county—it was

insisted that the long-continued user of the mill-dam by the public in the manner hereinbefore stated converted the mill-dam into a public highway; and as a corollary, that the County Commissioners were legally bound to keep the dam and the planks across the waste-gates in proper repair as a public road or thoroughfare; and that their failure and conceded omission to do this was actionable negligence for which they were liable in the pending action.

There is no doubt that an owner of land may dedicate it to the public for a highway, but an intent on the part of the owner to do so is absolutely necessary, and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists. *McCormick* v. *Mayor, &c., Balto.*, 45 Md. 512. There is no pretence that there was such a dedication in the case at bar. But a public way may also be proved either by a copy of the record or other documentary evidence of the laying out of the same by the proper authorities pursuant to statute, or by evidence of immemorial usage. *Day* v. *Allender*, 22 Md. 511. It is upon an alleged prescriptive right that reliance is placed. Whilst the public may as against the owner of the soil acquire by prescription a right of way, something more is needed to make the way, so acquired, a thoroughfare that the public authorities are bound to keep in repair. There must be not only a dedication or a right acquired by prescription, but there must be also an acceptance before the road becomes a public road that the County Commissioners are obliged to maintain. Where there is no obligation to keep a way in repair there is no negligence in a failure to repair; and where there is no negligence there is, of course, no liability. If it be conceded that the user proved in the case at bar was sufficient as against the owner of the dam to give to the public a right to use the dam as a way; still there is not the slightest evidence to show that the County Commissioners of Kent County ever accepted the alleged way over the dam as a public way or thoroughfare. Not only is such an acceptance necessary, but it must be proved

by the party who asserts the way to be a public way; and
it may be proved, when express, by the record, or it may
be implied from repairs made and ordered or knowingly
paid for by the authority which has the legal power to adopt
the street or highway, or from long user by the public.    2
*Dillon on Mun. Corp.*, sec. 642; *Kennedy* v. *Mayor, &c.,
Cumberland*, 65 Md. 521; 5 *Am. & Eng. Ency. Law*, 414.

The record explicitly states that the County Commission-
ers of Kent County never made any repairs to the dam or
to the planking over of the waste-gates, "or in any manner
exercised any control over the same." That the mill-pond
and dam were part of the mill property; "that the planks
over the flood-gates were placed there originally by the
owners of the mill property," and were from time to time
replaced and changed by them, "and that all repairs to said
dam and bridge were made by the owners of the property."
In the face of these facts it would be futile to contend that
there had been an express acceptance of this way or to in-
sist that an acceptance can be legitimately implied. There
is, and can be, no uniform and unbending rule by which
every case presenting the question of acceptance by impli-
cation arising from long-continued user by the public may
be decided. The surroundings, including the particular
locality, the character of the use and the condition of the
alleged way must in each instance have due weight in de-
termining whether user alone justifies the inference that
there has been an acceptance. If this were not so, and if
the naked circumstance that a designated way had been im-
memorially used as a.foot-way were sufficient of itself to
found a presumption of acceptance on, there would be hun-
dreds of by-paths in every county, now used over private
property as convenient and short routes from points on public
roads to other points on the same, or different public roads,
that would require the supervision of the county authorities
and that might, if permitted to become dangerous, subject
the county to pecuniary liability for injuries occurring on
them. It cannot be pretended that the mere use of such

by-paths converts them into public ways or raises a presumption that they have been accepted as such by the county authorities. The peculiar situation of this particular alleged way conclusively negatives an inference of acceptance by the public, and equally precludes an implication that the public have, as against the owner, acquired by prescription a right of way over and upon the dam. The breast of the dam was not a continuous structure. It was broken by an opening for the waste-gates for a distance of several feet. Without planks or flooring over the frames containing the gates it was not possible to traverse the bank from end to end except by stepping on the sills of these frames. This physical condition of itself showed there was no design on the part of the owners of the dam to throw it open as a public thoroughfare, because a portion of it where the gates were located was practically impassable. The record distinctly shows that the planks were placed across the sills not to accommodate the public or to afford them facilities for passing over and along the dam, but solely for the convenience of the employees of the mill in regulating the movements of the gates and freeing them from accumulated debris. This circumstance is of itself sufficient to indicate that there was no acceptance of the way by the public authorities, and no intention on the part of the owners of the dam to dedicate it as a public way, even if there were not the further fact that a right by prescription to use it as a thoroughfare would be utterly inconsistent with the owner's occupancy of it as a dam.

It was objected that the instruction granted was too general, but this we do not assent to. In form it was a demurrer to the evidence, and denied the right of the plaintiff to recover, conceding the plaintiff's evidence all to be true. *County Com.* v. *Wise,* 75 Md. 43.

We find no error in the second exception. After the Court below had granted the instruction set forth in the first exception the plaintiff's counsel presented a bill of exceptions, embodying the ruling on the instruction, which

exception he insisted on having signed before the jury left the box ; but the Court, not deeming that the bill of exception as prepared contained an accurate statement of the testimony, declined to sign it at that time and directed the jury, after they had rendered their verdict, to be discharged. From this ruling the second exception was taken. The de· cision in *Roloson* v. *Carson,* 8 Md. 208, relied on to establish error in this ruling, was founded on the Act of 1834, ch. 233, sec. 11. That act provided that bills of exception must be signed before the verdict is rendered if the party requires it. But the Code does not contain this statute and a different rule now prevails. In the " absence of any special rule upon the subject the general rule of practice is that the exception must be taken and noted at time of the ruling made ; but the reduction of the exception to form may and should be deferred to some more convenient time after the trial, *but during the same term of Court,* when the exception should be presented for the signature and seal of the Judge." *Thomas* v. *Ford,* 63 Md. 348 ; *Wheeler* v. *Briscoe,* 44 Md. 308.

As we discover no errors in the rulings excepted to, the judgment appealed from will be affirmed, with costs.

*Judgment affirmed, with costs above and below.*

(Decided June 16th, 1896).