# THE MAYOR AND CITY COUNCIL OF BALTIMORE, A MUNICIPAL CORPORATION,

## *vs.*

# LOUIS GORDON & JOHN C. TOLAND.

*Rights of way: dedication; intent; Poppleton's Plat.    Health Department: notice from.*

The grant by the owners of a private right of way over his land to buyers of different parcels of the same, to furnish them with convenient access to the street, is no dedication to public use.                                                               p. 153

The intent requisite to constitute a dedication can not be inferred from a plat, by placing names on it which import a private use as readily as a public use.                      p. 153

In order to prove a dedication, an intent on the part of the owner to dedicate his land to the particular use alleged is absolutely essential.                                         p. 153

Laying down streets on Poppleton's Plat of Baltimore City is not sufficient to avoid condemnation proceedings, in cases where there has been no dedications.                     p. 154

The mere fact that the public may, for many years, have used a way over private property is not sufficient to authorize the presumption that the same has been accepted by the public authorities as a public way.                              p. 155

Notice to abutting owners given by the Health Commissioner to clean out an alley is no evidence that the alley is a public alley.                                                   p. 156

*Decided June 20th, 1918.*

Appeal from the Circuit Court of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alexander Preston, Deputy City Solicitor,* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellant.

*Jacob J. H. Mitnick* and *Hiram J. Weiskopf* (with whom was *Simon E. Sobeloff* on the brief), for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

When Harry Dorsey Gough died in 1808 he was seized in fee, among other property, of a lot on the west side of Front street, in Baltimore City, having a front of 140 feet, and extending back westerly an approximate depth of 150 feet to Jones Falls. This lot lay just to the south of Billingsgate street, as it was then called, now known as Low street.

Proceedings for a partition of Mr. Gough's real estate were begun in the High Court of Chancery in 1817, and the return of the Commissioners was filed about eighteen months later. By it there was allotted to James Carroll, Jr., a portion of the Front street property, fronting 46 feet 1 inch on Front street, "by a depth of 125 feet to an alley 25 feet wide left on Jones Falls for the mutual accommodation of this and adjoining lots."

By the same return there was allotted to Charles R. Carroll a house and lot on Front street, immediately adjoining that allotted to James Carroll, Jr., and which had a front on Front street of 93 feet 11 inches, with a depth of 125 feet "to a 25 foot alley left on Jones Falls for the mutual accommodation of this and the adjoining lot." These two lots taken together thus exhausted the entire amount of real estate of

Mr. Gough's on Front street.  The space referred to as an alley in the allotment remained an open space along the side of the Falls, which could be entered from Low street, but was closed at the other end by property adjoining to the south, which ran through from Front street to the Falls.

The present litigation grows out of an attempt by the Mayor and City Council of Baltimore, through the passage of an ordinance, to close this space as being a public alley, which is resisted by the abutting owners, who claim title in themselves by virtue of various mesne conveyances from James Carroll, Jr., and Charles R. Carroll.

A bill was filed by the plaintiffs as owners asking an injunction, which by the decree of the Circuit Court of Baltimore City was granted, enjoining the Mayor and City Council from proceeding under the ordinance.  The question thus is one of dedication to the public, and the acceptance by the municipal

authorities of such dedication of this strip of ground, referred to as an alley, as a public highway.

To sustain the City's claim and contention it must be found that there was an intent to dedicate to public use on the part of the owner of the property, and that such intent was clearly manifested, and that the same was accepted by the City.

"There is no such thing as a dedication between the owner and individuals, the public must be a party to every dedication. It is the essence of a dedication to public uses, that it shall be for the use of the public at large. There may be a dedication of land for special uses, but it shall be for the benefit of the public and not for any particular part of it. * * * The grant by the owner of a private right of way over his land to buyers of different parcels of the same to furnish them with convenient access to the street is no dedication to public use." 8 R. C. L. 888, 9; *Thomas v. Ford,* 63 Md. 346.

The intent requisite to constitute a dedication can not be inferred from a plat, by placing on it names which import a private use, as readily as a public use. *Pella v. Scholte,* 24 Iowa, 283.

And what the character of the evidence of the intent must be, was clearly stated by JUDGE MILLER, in *Pitts v. Baltimore,* 73 Md. 326, when he said: "It has been decided by this Court in a number of cases that in order to make out a dedication, an intent on the part of the owner to dedicate his land to the particular use alleged is absolutely essential, and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists." And for this he cites the cases of *White v. Flannigain,* 1 Md. 539; *Moale v. Baltimore,* 5 Md. 314; *McCormick v. Baltimore,* 45 Md. 512; *Tinges v. Baltimore,* 51 Md. 600; *Hall v. Baltimore,* 56 Md. 187; *Baltimore v. White,* 62 Md. 362 and *Glenn v. Baltimore,* 67 Md. 390.

To support the contention of the City reliance is placed upon two facts, which will be considered in the light of the rules of law applicable to such cases. These are:

1st. The description in the return of the Commissioners which called for a depth of one hundred and twenty-five feet to an alley twenty-five feet wide, and

2nd. "Poppleton's Plat."

Taking these up in inverse order, the effect to be given to Poppleton's Plat has been passed upon by this Court in *Baltimore* v. *Bouldin,* 23 Md. 328, and *Baltimore* v. *Hook,* 62 Md. 371, under which it was distinctly held, that the laying down of a street upon that plat was not sufficient to avoid condemnation proceedings, in cases where there had been no dedication. But apart from these positive adjudications the situation is this: The appointment of a commission to make the partition of Mr. Gough's estate, and the act of the Legislature giving authority to John E. Howard and others as Commissioners, to have a plan of the City prepared, both took place in the same year. The return of the commissioners for the partition was some years earlier than the filing of Poppleton's Plat. There do not appear from the Record to have been any legislative acts with reference to the plat subsequent to the time of its being filed, nor could the laying out of a street upon that plat operate as a dedication, without the consent of the owner or owners, where there had been no prior dedication of the land.

With regard to a dedication resulting from the description in the partition proceedings, that can stand in no better position. It is perfectly true that the call is for a depth of one hundred and twenty-five feet to a twenty-five foot alley, but it is equally true that by the very terms of that call, the alley was one left, not for the use of the public generally, but was specially restricted to the use of the lot or lots carved out of the land of Mr. Gough which should bound thereon. Thus instead of a clearly proved intent to dedicate this alley to public use, it is limited to the use of the owners of the abutting land of which Mr. Gough died seized.

There is another circumstance which in many of the adjudicated cases has been regarded as negativing the purpose to

dedicate. The alley called for in the partition proceedings had no outlet to the south, and thus formed a *cul de sac,* as it is commonly called. As early as 1813 LORD CHIEF JUSTICE MANSFIELD, in the case of *Woodyear* v. *Hadden,* 5 Taunt. 126, had a similar situation presented. It differed from the present case, in that nineteen houses were erected on the land having an outlet on the *cul de sac,* which was watched, paved, cleaned and lighted at the public expense, and yet in that case it was said that there had been no such dedication as was requisite to constitute a public highway. This was followed some years later by the case of *Barraclough* v. *Johnson,* 8 Ad. & El. 99, in which the Court followed the same rule, and clearly distinguishes a use which is properly to be designated as a license, from a dedication. This rule of the English Courts has been adopted in a number of cases in this country; *Gilfillan* v. *Shattuck,* 142 Cal. 27; *People* v. *Johnson,* 237 Ill. 237.

These cases all differ radically from the case of *Beale* v. *Takoma Park,* 130 Md. 306, in which there was an express dedication.

Nor is there any sufficient evidence in this case to show any acceptance whatever upon the part of the municipal authorities. The mere fact that the public may for many years have used a way over private property is not sufficient to authorize the presumption that the same has been accepted by the public authorities as a public way. *James* v. *Kent Co.,* 83 Md. 377. The evidence in this case with regard to acceptance is all one way. This alley space has never up to the present time been paved at all, what grading has been done was done by and at the expense of the owners of abutting property. The sole act testified to of any interference on the part of the municipal authorities is that upon one occasion during the administration of Mayor Hooper, notice was sent to the owners of the property to remove or clean certain manure pits located on this alley way. No copy of this notice was offered in evidence, but from the statements of the

witnesses this seems to have emanated from the Health Department of the City government, in the performance of its duty to cause the removal of or remove nuisances, an act which might just as well be performed with regard to private as with regard to public property, and this falls far short of any positive action which can by inference be regarded as an acceptance.

Reference is made in support of the City's case to Ordinance No. 2, approved June 14, 1905. But that ordinance by its very terms is without application in this case, since it attempts to deal, and only to deal with "streets, avenues, lanes and alleys which have been heretofore *unconditionally dedicated* as highways," and since in the present case that dedication did not exist by virtue of any deed or plat made with the sanction of the owner, there are no acts disclosed by the evidence from which an "unconditional dedication" can be properly deduced.

The decree appealed from will accordingly be affirmed.

*Decree affirmed, with costs.*