BLANK ET AL. *v.* PARK LANE CENTER, INC.

[No. 148, October Term, 1955.]

570

*Decided April 10, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Abram C. Joseph,* with whom were *Herman Berlin, Daniel C. Joseph* and *Calman A. Levin* on the brief, for appellants.

*Bernard H. Herzfeld,* with whom were *Samuel Cooper* and *Sterling W. Klein* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellants filed a bill seeking declaration that a way or thoroughfare in the rear of stores owned by them was dedicated to the public, or to them, and an injunction restraining the appellee, Park Lane Center, Inc., from interfering with the use of the way. The chancellor, holding that the way had not been dedicated and was a driveway owned by the appellee, dismissed the bill, and this appeal is from that action.

In 1947 Park Lane acquired title to five and a half acres of land in Baltimore, almost all of a block bounded on the east by Park Heights Ave., on the north by Wylie Ave., on the west by Reisterstown Road, and on the south by Cold Spring Lane. All of the land within these four streets was acquired, except two contiguous lots at the northwest corner of the tract. The lot at the corner of Park Heights and Wylie Aves., now improved by three stores known as 4446, 4448 and 4450 Park Heights Ave., had a frontage on Park Heights Ave. of about one hundred ten feet and a depth of some one hundred ninety-five feet. The other lot, adjoining it to the south, now improved by a store known as 4442-4444 Park Heights Ave., had a frontage of forty feet on Park Heights Ave. and a depth of one hundred twenty-seven feet. Previous owners had established of record a fifteen foot alley that ran south from Wylie Ave. along the rear of the corner lot at Park Heights Ave. and Wylie Ave. some one hundred sixty feet, then east seventy feet, then south again forty feet, and then east again along the south side of 4442 Park Heights Ave. some one hundred twenty-seven feet to Park Heights Ave. The owners of the larger and the smaller lots have an easement of use in common in the alley, or more accurately the two alleys that together lead from Park Heights Ave. to Wylie Ave. along the side of one lot and along the rear of both.

In 1948 Park Lane improved its property with a number of buildings, which it rented to super-markets, restaurants, banks and other commercial establishments. A number of these fronted on Park Heights Ave., others on Cold Spring Lane, with some on Reisterstown Road. It built five entrances from the streets into the hollow square enclosed by the commercial establishments, most of which was designed as, and serves as, a parking area. One was an entrance from Wylie Ave., some forty feet wide, made up of the fifteen foot alley in the rear of the corner lot at Park Heights and Wylie Aves. and twenty-five additional feet. Another was from Park Heights Ave., again made up by the fifteen foot alley there situate,

with fifteen additional feet alongside the wall of a store, used to provide angle parking of automobiles. A third was thirty feet wide from Cold Spring Lane opposite the Wylie Ave. entrance but further to the east, so that if one wanted to drive from Wylie Ave. to Cold Spring Lane through the square, he could not drive straight through but would have to swing to the left about a third of the way across and then straighten out again. A concrete apron was built in the rear of the stores facing Park Heights Ave., which the appellants describe as a roadway between Wylie Ave. and Park Heights Ave. The appellants say that it was provided for the convenience of the stores and their patrons—to provide suitable accommodations for trucks serving the stores and for customers going into the rear entrances.

In 1950 the appellants, Blank and his wife, bought the smaller lot, 4442-4444 Park Heights Ave., and began the operation of a store there. In 1953 the corporate appellant, owned by Blank and his family, bought the corner lot and caused it to be improved by three stores, one of which was leased to a super-market, which soon offered serious competition to one or more of Park Lane's tenants. In 1955 Park Lane built a masonry wall some four feet high with a two foot wire fence on top, beginning at Wylie Ave. and running south along the westernmost side of the fifteen foot alley, and then east, so as to leave open but fifteen feet adjacent to the side of 4442 Park Heights Ave. and to the rear of both lots of the appellants. Park Lane then built a high chain link wire fence along the Wylie Ave. boundary of its property running west from the masonry wall for some one hundred fifty feet, and there built a new entrance from Wylie Ave. into the parking area, some thirty feet wide. It also constructed a new store fronting on Park Heights Ave. on the land it had there previously utilized for parking automobiles. The effect of these changes was to fence in the appellants' stores and, according to their claims, to deprive them of considerable patronage because of the difficulties of customers reaching the stores after parking

beyond the wall. They also complained that trucks, which they must use for the delivery of merchandise, have insufficient room to get into their property and that this causes them great inconvenience and expense.

Appellants have abandoned any claim of dedication of the former driveway leading from Park Heights Ave. They contend earnestly that the original driveway, consisting, as they say, of the entrance at Wylie Ave. and the exit at Cold Spring Lane, and the concrete apron along the rear of all of Park Lane's stores that front on Park Heights Ave. was a way or thoroughfare which was dedicated either by common law dedication or by virtue of the provisions of Sec. 691 of the Public Local Laws of Baltimore City, Flack, 1949. That act provides that: "Every private street, lane, alley or way in the City of Baltimore * * * which for a period of one year shall connect with, open into, or lead to or from any public street, lane, alley or way of said city, and passage between which * * * shall not be barred or obstructed by a wall, fence or similar structure * * * shall be conclusively presumed to have been dedicated by the owner or owners thereof to public use as public highways * * * either by ordinance of the Mayor and City Council of Baltimore or in any other manner in which a dedication of land to public use made in any other way be accepted."

We think it clear that there was no common law dedication. It is not contended that there was in this case a specific grant which is essential to express dedication. Implied dedication is made up of acts and conduct of the owners of land with respect to a way which estop him from denying that his intention was to dedicate the way to the public. The intention of the owner is the governing test. In *Bloede v. Baltimore City*, 115 Md. 594, 595, the Court reiterated a statement of earlier cases, as follows: " 'The law governing the dedication of land as a public highway has been very frequently before this Court, and its general principles are definitely and affirmatively established. In every case, an intent on the part of the owner to dedicate his land to the particular

use alleged is absolutely essential; and unless such intention is clearly proved by the facts and circumstances of the particular case no dedication exists.'" See also *Harlan v. Bel Air,* 178 Md. 260, 265; and *Baltimore City v. Gordon,* 133 Md. 150, 153. In the *Gordon* case the Court said that there is no such thing as a dedication between an owner and individuals but the public must be a party to every dedication. It also noted that: "'* * * The grant by the owner of a private right of way over his land to buyers of different parcels of the same to furnish them with convenient access to the street is no dedication to public use.'" In the case before us the chancellor found as a fact that at each entrance into the square from a street, there were neon signs carrying one of the following legends: "Park Lane - Drive In", "Shop - Park Lane Parking - Drive In", or "Park & Shop - Park Lane - Free Parking", as well as that each entrance-way and all the area making up the inner hollow square not owned by appellants, were maintained exclusively by Park Lane, who paid the taxes on them, removed the snow from them and maintained and paid for all lighting and markings. Park Lane had paved the area. He noted that Park Lane employed a private policeman to police the entrances and the parking area by directing traffic and enforcing rules as to parking and the blocking of the driveways. In addition to the fact that the land records showed that the lots that Blank and the corporate appellant bought had an easement only in the fifteen foot alley, there were of record at the time Blank bought the first lot seventeen leases from Park Lane to its tenants. Each contained, in substantially the same form, a clause that customers of the tenant would be entitled to non-exclusive free use, in common with others "of the aforesaid driveways and footways and also parking areas", with the explicit proviso that the landlord "shall at all times have full control, management and direction of said driveways, footways and parking areas, and that the Landlord shall have the right at any time to change the layout thereof."

The appellants attempt to overcome the effect of these findings and facts by claiming that there was use of the driveway by persons not desiring to shop or to park, but who intended to drive from Wylie Ave. to Cold Spring Lane as a matter of convenience or to avoid a traffic light. The evidence showed that there was some such use but not how much, but, in any event, it does not help the appellants. It has often been held that the mere fact that the public may have used a way over private property for many years is not sufficient to raise the presumption that the way has been accepted by the public authorities as a public street. *Baltimore City v. Gordon, supra; Harlan v. Bel Air, supra.* In this connection, what was said in *Ass'n of Taxi Operators v. Yellow Cab Co.,* 198 Md. 181, 190, in regard to the driveway south of Union Station in Baltimore between St. Paul and Charles Streets, is pertinent. The opinion said: "It seems to be perfectly clear that the purpose of the driveway was to afford an ingress and egress to the Railroad property by those persons having business with the railroad. As the station necessarily operates on a twenty-four hour basis, and never closes, the drive must remain open, and it is entirely impracticable (even if it would be good business or good common sense) for the employees of the Railroad to stop each vehicle entering the drive to enquire whether it is merely passing through or whether the occupants have business with the Railroad. The fact that the Railroad did not do this, or put up a sign, does not evince any intention on its part that the drive should be used as a general public thoroughfare * * *. The evidence shows that the Railroad paves the drive, polices it, lights it, keeps it in repair, and pays taxes on it. Merely because it did not put up a sign forbidding general public use, or did not adopt some wholly impractical method of trying to ascertain the purpose of any vehicle entering the driveway, does not indicate an intention to dedicate."

There is nothing in the case to suggest that any of the appellants, or their tenants, were told or otherwise led to believe that they had greater rights than the record

title disclosed, or that they did not actually know, when they acquired their respective interests in the land, of the facts the land records disclosed. We find that there was ample evidence to support the findings of fact by the chancellor and his conclusion that there was never any intention to dedicate the so-called way or thoroughfare, as claimed by the appellants, and that there was in fact no dedication.

The contention that there was dedication by virtue of the Public Local Laws of Baltimore City is fully answered by the decision of this Court in *Ass'n of Taxi Operators v. Yellow Cab Co.*, from which we have quoted earlier. The Court there held that the test as to dedication under the Public Local Law was essentially that of the common law, namely, the intention of the owner of the property. It said: "Whatever may have been the purpose of the statute, we think there would be grave doubt of its validity if it should be applied in cases where the method of the construction and opening of a street or lane or drive clearly indicated that it was not intended to be dedicated to public use as such. As we have already shown, the drive was not intended for that purpose, and to permit it to be taken by the City under the statute would be an appropriation of private property without compensation. We cannot assume that the Legislature intended to say that there would exist a conclusive presumption against a property owner unless he did the things set out in the statute, where he did not lay out and open a street as a public highway, but evidently opened it only for the use of those people coming to do business with him— his customers, clients, patients, etc. A statute cannot effectually declare that title to property now vested in A shall be vested in B. *Queen v. Anderson,* 191 Md. 522, 532, 62 A. 2d 612, 616. As the chancellor remarked in his opinion, under the interpretation of the law claimed by the appellants, every private driveway in Baltimore City has become a public street. He gives as illustrations the driveway leading to Johns Hopkins University and that leading to Johns Hopkins Hospital, also the entrance to

578

Sears, Roebuck & Company, and the entrance to St. Agnes Hospital. We might add the entrance to every filling station. We are unable to adopt the contention of the appellant that intention is immaterial under the terms of the statute. It cannot constructively presume an intent that is contrary to the manifest intent. *Mahoney v. Byers,* 187 Md. 81, 48 A. 2d 600. The City has not attempted to take the point of view of the appellants that the driveway has been dedicated to the use of the public, and has not attempted in any way to accept it. Ordinance No. 753 of 1922 accepts only those streets which have been heretofore 'unconditionally dedicated', and that is not the case with the station drive." In the instant case the City has done nothing to indicate that it has accepted a dedication of any of the appellee's property or that it considered there had been an offer of dedication it could accept. The portion of the opinion we have just quoted is fully applicable to the case before us, and confirms our conclusion that there has been no dedication of the appellee's property. The chancellor was right in dismissing the bill.

*Decree affirmed, with costs.*