STATE ROADS COMMISSION OF MARYLAND
ET AL. *v.* TEETS ET AL.

[No. 135, October Term, 1955.]

*Decided June 7, 1956.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Frederick A. Puderbaugh, Special Attorney,* with whom
were *C. Ferdinand Sybert, Attorney General, Joseph D.
Buscher, Special Assistant Attorney General,* and *William O.
Treacy, Special Attorney,* on the brief, for the appellants.

*William A. Gunter,* with whom was *Stephen R. Pagenhardt*
on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

This case involves a controversy between the State Roads
Commission (the "Commission") and the owners of certain
lots in a subdivision known as "Lake View" on Deep Creek
Lake, in Garrett County. The lots owned by the appellees
overlook the lake and lie between it and a State road (Route
219). Between the southwesterly boundary of the appellees'
lots and the State road lies a strip of land twenty feet wide
and seven hundred feet long, which the Commission wishes
to use in widening and improving Route 219. For a time
negotiations proceeded between the Commission and the ap-

pellees for the acquisition by the Commission of these lot owners' rights in this strip, but these negotiations ended when the Commission reached the conclusion that there had been a dedication of the strip to public use as a road, as a result of the Commission's own acceptance of an offer of dedication, and hence that the lot owners had no interests which the Commission needed to purchase or condemn. The lot owners were notified of this conclusion and thereupon instituted this suit for an injunction to restrain the Commission and its contractor from entering upon the strip. The Commission's demurrer to the bill was overruled, the case came on for hearing on the merits and the Circuit Court held that the lot owners were entitled to an injunction as prayed. The Commission appeals from the order overruling its demurrer and from the decree for an injunction.

There is no real dispute with regard to the facts, though the Commission challenges the admissibility of parol evidence intended to show that one of the owners of the subdivision did not intend to dedicate the strip in dispute to public use as a road. The chief question is whether or not there was a dedication. This main question is common to both the ruling on the demurrer and the final order, and it has been so treated by the parties. We shall follow the same course.

In November, 1925, Charles N. McIntire acquired the record title to the property, which later became the Lake View subdivision, from John O. Thayer and wife, and he continued to hold such title in 1928. During this time (and longer) he was in partnership with Alexander C. Mason in this real estate venture. This fact was determined in January, 1938, in an equity proceeding in the Circuit Court for Garrett County instituted by Wade H. Mason, the sole heir of Alexander C. Mason; and it was decreed in that case that McIntire held the record title in trust for himself and his partner, Mason. All of the appellees derive their titles through McIntire and Mason, though Mason's name does not appear as a grantor.

Alexander C. Mason was a civil engineer and at one time was county surveyor for Garrett County. He laid out the

Lake View subdivision and his plat of it was recorded among the land records of Garrett County at some time prior to June 27, 1928. This plat shows the scale to which it was drawn and the general layout of the development, including lots 27-41 and the twenty-foot strip now in controversy, but it does not state the courses and distances of any lot lines or roads or ways. The shoreline of Deep Creek Lake in front of lots 27-41, as shown on this plat, runs roughly on a northwest-southeast line. A margin—presumably a road or right of way—was left between the lakeshore and the northeasterly boundaries of these lots. Those boundaries constitute a continuous straight line which is nearly parallel with the shoreline. The lots appear from the plat to be of about the same width, but they increase markedly in depth from No. 27 at the northwest end to No. 41 at the southeast end of the tier. Their boundary lines on the southwesterly side constitute a single, straight line, which is parallel with the State road, Route 219. Between them lies the twenty-foot strip here in dispute, which is designated on the plat as "Road Way." On the other side of the State road, and separated from it by a strip of varying width designated as "Front Street," are: first, lots 20 and 21, which lie behind lots 27-29; second, a cemetery, which is not identified as such on the 1928 plat and which lies behind lots 30-35; and third, lots 22-26 which lie behind lots 36-41. Behind these lots and the cemetery there is a strip designated as "Back Street." Running from Back Street along the northwest boundaries of lots 20 and 27 to the lake front, and crossing Front Street and the State road approximately at right angles, is a way designated as "Thayer Street." Unmarked, narrow, open spaces—apparently ways of some sort—parallel to Thayer Street and running from Front Street to Back Street separate the cemetery tract from lot 21 to the northwest and from lot 22 to the southeast. There is also another apparent way, which likewise bears no designation on the 1928 plat, running parallel to Thayer Street along the southeast side of lot 41 from the "Road Way" to the lakeshore.

The recorded plat does not contain a legend, such as is

often placed on subdivision plats, to the effect that there is no dedication of any streets, alleys or ways shown thereon; and in fact it says nothing whatever about dedication.

The description of the various lots by courses and distances was set forth in an instrument recorded among the land records of Garrett County in Liber E. Z. T. No. 97, folio 11, and the Chancellor found that the various deeds for lots referred to the lot numbers only and did not give courses and distances. References were also made to the recorded map mentioned above. None of the deeds specifically mentioned the 20-foot "Road Way," but all of them contained the usual clause granting easements reading, "Together with the rights, roads, ways, water, privileges and appurtenances thereto belonging or in anywise appertaining." The deeds further provided that the grantees should be entitled to use and enjoy in common with the grantors, their heirs and assigns, the water, right of way and road privileges contained in a deed from John O. Thayer and wife to Charles N. McIntire, dated June 25, 1928, and recorded in the land records of Garrett County in Liber E. Z. T. No. 97, folio 404.

On June 26, 1928, by a deed recorded at the next folio of Liber E. Z. T. No. 97, McIntire conveyed to Thayer all those roads or rights of way in "Deep Creek Farm" designated on the map already referred to as "Front Street", "Thayer Street", and "Back Street" and also the unnamed road or right of way alongside of lot 41. These were to be used in common by the parties and their heirs and assigns. No mention was made of the 20-foot "Road Way." (In the deed of June 26, 1928, the ways which were called "Streets" on the map of Lake View were referred to as "Roads.") Neither of the deeds dated June 25th and 26th is included in the record, nor is the document giving the courses and distances of the lots here involved. They and the map seem to give such information pertinent to the present suit as was a matter of public record before a public sale of lots in Lake View which (the map indicates) was to be held on June 27th, 1928.

As was found by the Chancellor:

"At the time the addition was laid out by Mason, and at a time when he was one of the owners, he stated to two reputable witnesses, neither of whom are parties to this suit, that the purpose of the twenty foot strip called 'Roadway' on the plat, was for the use of the various lot owners, in parking their cars, and (according to Wade H. Mason) not for the use of the general public."

*　*　*　*　*　*

"No use of the strip in common by the owners of Lots 27-41 has been shown. Apparently by mutual consent—or at least without dissent—each owner treated the space between his lot and the space marked on the plat as 'State Road' as though it were part of his property. In addition to constructing thereon driveways leading to their homes or garages, some of them have beautified the space by planting ornamental trees or by grass plots. One has built a wall which cost about $500.

None of them have been assessed for taxes on parts of the strip, but tax assessments were simply by lot numbers. Several of the lots are unimproved, but most of them have attractive summer cottages—one at least is designed as a year-round-home—and all lots slope down towards and have a good view of Deep Creek Lake."

The plaintiffs' right to maintain their bill is challenged solely on the ground of an alleged dedication, and the nature and extent of their interests in the twenty-foot strip have not otherwise been put in issue. A court of equity is not ordinarily the appropriate forum in which to try questions of title, but jurisdiction cannot be conferred by consent and it is necessary that the plaintiffs have some interest which may serve as the basis of equitable relief. Their bill alleges facts sufficient to support claims on their part to at least one-half of the twenty-foot strip, and the proof sustains these

allegations. The bill also alleges that a private right of way over the whole strip was created in favor of the purchasers of lots bounding on the "Road Way", but the present status of any such right of way is cloudy on both the allegations of the bill and the proof by reason of its apparent abandonment and inconsistent use. The lot owners also allege possessory rights and rights based upon improvements on both sides of the strip, though they have not pressed any claims in this proceeding based upon adverse possession.

The plaintiffs' claim to one-half of the strip is supported by Code (1951), Article 21, Section 115, under which "All * * * grants or conveyances of land in this State, binding on any street or highway, or when any street or highway shall be one or more of the lines thereof, shall be construed to pass to the * * * grantee * * * all the right, title and interest of the * * * grantor of the said land, to the centre of the street or highway * * * unless the * * * grantor shall in express terms in the writing by which the * * * conveyance is made reserve to himself all the right, title and interest to the said street or highway." This Section is applicable to property binding on a private street as well as to property binding on a public one. *Campeggi v. Wakefield,* 157 Md. 229, 145 A. 546; *Maryland Telephone & Tel. Co. v. Ruth,* 106 Md. 644, 68 A. 358; *Pope v. Clark,* 122 Md. 1, 89 A. 387.

The lot owners also base their claims in part upon improvements made by them on the portions of the strip lying between their respective lots and the State road. In support of these claims they rely upon *Whittington v. Crisfield,* 121 Md. 387, 88 A. 232. See also *Broumel v. White,* 87 Md. 521, 39 A. 1047.

We think that the plaintiffs have shown sufficient interest to maintain the suit.

There is no dispute between the parties on the proposition that the "Road Way" shown on the plat of Lake View did indicate some kind of way. The dispute is as to what kind. The Commission's claim is that there was a dedication of the strip to public use, and it relies strongly on

*Harlan v. Bel Air,* 178 Md. 260, 13 A. 2d 370, in support of this contention. The lot owners deny any dedication.

As the Chancellor pointed out in his opinion, there may be a marked difference between the rights acquired by a grantee and those acquired by the public where a deed described land as bounding on a street or road. See *White v. Flannigain,* 1 Md. 525; *City of Baltimore v. Broumel,* 86 Md. 153, 37 A. 648; *Broumel v. White, supra; Baltimore v. Yost,* 121 Md. 366, 88 A. 342; *Adams v. Peninsula Produce Exchange,* 138 Md. 656, 115 A. 106; *United Finance Corporation v. Royal Realty Corporation,* 172 Md. 138, 191 A. 81; *Blank v. Park Lane Center,* 209 Md. 568, 121 A. 2d 846. See also *Tiffany, Real Property,* 3rd Ed., § 1103, where the author points out that there is no need to invoke any doctrine of dedication where purchasers of lots sold by reference to a plat are seeking to enforce, as against their vendor, rights to have streets or other public places kept open in accordance with the plat upon the strength of which they bought. He then goes on to say:

> "Many of the cases, however, which assert this doctrine of dedication by sales with reference to a plat, involve the rights of the public generally, or of the municipality as representative of the public, and that such sales do usually involve a dedication in accordance with the plat may be regarded as settled in most, if not all, of the states. It is to be regretted that, of the great number of cases in which a dedication by sales in accordance with a plat is asserted, none, so far as the writer has observed, undertake to explain why such sales should operate as effecting a dedication; * * *. The doctrine had its origin, it may be suspected, in a failure to distinguish between the rights of the individual purchasers and of the public, the courts saying, as they not infrequently do, that sale of lots with reference to a plat involves a dedication of the lots [*sic,* streets?] in favor of the purchasers and ignoring the well-settled principle that land cannot be dedi-

cated for the benefit of particular members of the public. The expression 'dedication' having thus been introduced to express the result of such sales in favor of individuals, it was to be expected that, as time went on, such sales should come to be regarded as effecting a dedication for all purposes."

Mr. Tiffany then cites several cases taking a view contrary to that set forth in the concluding sentence above quoted.

In the present case we are concerned only with such rights, if any, as the public may have acquired in the twenty-foot strip.

Some confusion may enter into the discussion of dedication through the not infrequent use of the word "dedication" to signify two quite different things—one, an offer of dedication, the other, the completed transaction, which is consummated only when an offer of dedication has been accepted. The confusion grows worse if a considerable amount of time elapses between the time when the offer of dedication is made and the time when it is accepted, rejected or withdrawn. In the *United Finance Corporation Case* it was stated that "It is essential to any complete dedication of a way to a public use that there be an offer and an acceptance."

Confusion may become even worse confounded, if, during the somewhat nebulous stage in which no public body, such as a city or county or even the State, has accepted an offer of dedication, the public has accepted the dedication by using the street as a public way. See *Title, Inc. v. Dubel*, 177 Md. 387, 9 A. 2d 591; *North Beach v. North Chesapeake Beach Land & Imp. Co.*, 172 Md. 101, 191 A. 71; *United Finance Corp. v. Royal Realty Corp.*, *supra; Suburban Garden Farm Homes Corp. v. Adams*, 171 Md. 212, 188 A. 808. We are not confronted with that problem here, because the evidence shows no public use of the strip now in dispute at any time. Trees have grown up in the strip, shrubbery has been planted and, by what seems to have been tacit, common consent, each lot owner has used that portion of the strip between his lot and the State Road as if it were his own—as a means of ac-

cess to the public road, as a parking place, as a recreation area, or as a combination of two or more such purposes. It has not been used as a common right of way for the owners of lots abutting on it.

In this case there has been a long delay in any move towards accepting the asserted offer of dedication. Though mere delay will not bar the right of a municipality to accept dedication and assume control of a street *(Whittington v. Crisfield, supra)*, the acceptance must be within a reasonable time, and what is a reasonable time must be determined on the facts of each case *(United Finance Corp. v. Royal Realty Corp., supra)*. In the instant case there was a lapse of over twenty-six years, during which there was no act of acceptance. It is true that the appellees were not specifically assessed for the twenty-foot strip; but, as the Chancellor pointed out, tax assessments were made by lot numbers, and the absence of any specific assessment in respect of the strip seems without significance. The evidence is clear that neither the County nor the Commission ever undertook to make any use of, or to assume any responsibility for the strip until the Commission's very belated claim of acceptance which was first asserted in 1955.

Because of our views set forth below as to whether or not there was any dedication or offer to dedicate, we do not find it necessary to go into the questions of whether the acceptance was timely, if the Commission could accept it at all, or of whether the offer of dedication had been withdrawn before its purported acceptance.

The first essential of a dedication is an offer to dedicate, and an intention to dedicate is a necessary ingredient of any such offer. To avoid the merely cumulative citation of numerous authorities we shall refer to only the most recent decision of this Court in support of the proposition that there must be an intention to dedicate. That decision is *Blank v. Park Lane Center*, 209 Md. 568, 121 A. 2d 846.

The Commission's principal contention is, in essence, that the showing of the twenty-foot "Road Way" on the recorded plat of Lake View, without express words negativing dedica-

tion, is conclusive as showing an intention to dedicate that way to public use. This contention is based chiefly upon the case of *Harlan v. Bel Air,* 178 Md. 260, 13 A. 2d 370, which has already been cited. The Commission's brief quotes a paragraph of the syllabus to this case as contained in 178 Md. in support of this contention, but fails to indicate that it is quoting the syllabus and not the opinion. A reading of the opinion itself will show that what the Court said is somewhat less sweeping than the syllabus paragraph might suggest. What was actually said in the opinion which is directly pertinent to the question here appears at page 265 of 178 Md., page 372 of 13 A. 2d, and reads as follows:

"The law is well established in this state that an intent on the part of an owner of land to dedicate it to public use is absolutely essential to constitute a dedication. *Tinges v. Baltimore,* 51 Md. 600, 609; *Pitts v. Baltimore,* 73 Md. 326, 332, 21 A. 52. When an owner lays off land in lots and sells them as bounding on certain streets, which are sufficiently designated, the streets are held to be dedicated to the public. *Lippincott v. Harvey,* 72 Md. 572, 577, 19 A. 1041. If the lots are described as binding on a street, and the street is shown on a public map or a private plat, such a designation raises an implied covenant that a public way exists; and unless the grantor uses language to show that he did not intend a dedication to public use, the presumption of dedication becomes conclusive. *Philadelphia, B. & W. R. Co. v. Baltimore,* 124 Md. 635, 640, 93 A. 146."

In *Pitts v. Baltimore,* cited in the above quotation from *Harlan v. Bel Air,* our predecessors said:

"It has been decided by this Court in a number of cases, that in order to make out a dedication, an intent on the part of the owner to dedicate his land to the particular use alleged, is absolutely essential, and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists. The evidence of such intention is furnished in various ways; but as dedication will be presumed where the facts and circumstances of the case clearly warrant it, so that presumption may be rebutted and alto-

gether prevented from arising by circumstances incompatible with the supposition that any dedication was intended. One of the modes by which dedication may be evidenced is where a street is designated on a plat made by authority, or by the party himself, as passing over certain lands, and the owner subsequently conveys lots fronting or binding on such street, he remaining the owner of the fee in the bed of the street; this is held to be dedication of the land over which the street passes to the public use, and on opening the street the owner of the fee will be entitled to nominal damages only as compensation. In such case the sale and conveyance of lots so bounded upon the street, in the plan of a town or city imply a grant or covenant to the purchaser that the street thus indicated and called for, shall be and remain forever open to the use of the public, free from all claim or interference of the proprietary of the estate therein, inconsistent with such use. It is supposed the existence of the street, either present or prospective, entered into the consideration of the purchase, and thus the grantor of the lot or lots sold, has been compensated for the public use of the street, and is therefore estopped to make any further claim for such use as against the public. *But the implication of such a covenant may be rebutted in many ways, as by other express covenants or agreements between the parties,* or by the fact that the call for the street was made merely for the purpose of convenient description of boundaries as in case of the partition of an estate among heirs, *or by any other facts and circumstances showing the absence of an intention to dedicate to public use."* (Emphasis supplied.)

Since *Harlan v. Bel Air* cites *Pitts v. Baltimore* with approval, it can hardly be urged that it has overruled the *Pitts Case* and has substituted an irrebuttable presumption for one which may be rebutted.

It may be well to point out, as did the Chancellor, that *Pitts v. Baltimore* does not establish a rule that the presumption of dedication from the description of a lot as fronting or binding on a street shown on a public or private plat becomes conclusive, unless there is language used by the grantor in

the conveyance itself which contains such a description showing that no dedication to public use was intended. An inference that such a rule was supported by the *Pitts Case* might be drawn from language used in *Baltimore v. Frick*, 82 Md. 77, at 83-84, 33 A. 435, at 436, and quoted in *P., B. & W. R. R. Co. v. Baltimore*, 124 Md. 635, at 640, 93 A. 146, at 148, which in turn is cited in *Harlan v. Bel Air*.

When the plat of Lake View is considered together with the deeds of June 25, 1928, and of June 26, 1928, and with the deeds under which the appellees claim, which specifically refer to the rights of way established under the first of· those deeds. we think any presumption of an intention to dedicate the twenty-foot "Road Way" is overcome by at least one of the means recognized in *Pitts v. Baltimore*.

In the first place, the term "Road Way" as applied to the strip in question does not of itself carry any clear-cut inference that a public way was intended. We are not dealing with a built up city or an extension of a city. Lake View was a projected summer resort development in the mountains bordering upon a lake created by the impounding of water behind a new dam. While it is only reasonable to suppose that access to the lake was very much in the minds of the developers and of the purchasers of lots, there is no readily apparent objective of either the sellers or the purchasers of lots which would be served by making the "Road Way" a public way. On the contrary, it would seem more probable that only owners or purchasers of land in or near the development were intended to be benefited.

This view is supported by the deeds between the Thayers and McIntire and the deeds to the appellees. Access to the lake was assured to the parties to the deeds and to their respective successors and assigns. If the recording of the plat and the sale of lots with reference thereto were sufficient to dedicate the roads or streets shown to public use, the provisions for rights of way over Front Street, Back Street, Thayer Street and the undesignated way along one side of lot No. 41 were wholly superfluous. It should also be noted that the name "street" which the plat gave to several of the

projected ways in the development is considerably more suggestive of a public highway than the name "Road Way." Yet it was thought desirable to spell out the common rights of user in the roads (as they were called in the Thayer-McIntire deeds) which were designated on the plat as streets.

It is also very difficult to imagine what reason or purpose might have existed for dedicating to public use as a highway a strip of land immediately adjacent to an existing State highway and running parallel with it for some seven hundred feet.

It might be argued that the omission of any reference to the "Road Way" in the Thayer-McIntire deeds of June 25 and 26, 1928, was due to its being considered as dedicated to public use. Why this particular way should be so regarded when the others just referred to quite obviously were not so regarded is not apparent. We think that a contrary inference is much stronger—that the twenty-foot "Road Way" was not mentioned in the deeds because it was never intended by the developers or by anyone else that anyone other than the owners of lots Nos. 27-41 was to have any rights of user whatever in this strip.

It follows that the Commission has not met the burden of establishing an intention on the part of the owners of the strip to dedicate it to public use and hence that its claim of dedication fails.

In this view it is unnecessary to pass upon the Commission's objection to the admissibility of the evidence relating to oral statements of one of the developers showing the absence of any intention to make a dedication. Cf. *Williams Realty Co. v. Robey,* 175 Md. 532, 539, 2 A. 2d 683.

The decree in this case is for an injunction restraining the Commission and its contractor from entering upon any part of the twenty-foot "Road Way." The case as presented in this Court has turned entirely upon the question of dedication, including the question of the applicability of the doctrine of the *Whittington Case* if there had been a dedication. On the basis of our holding that there has not been a dedication of the strip in question, and in the absence of any challenge to

the extent of the area upon which entry by the Commission and its contractor has been enjoined, we shall affirm the decree. In so doing, we are not undertaking to decide any questions of title, which may be pertinent in any subsequent condemnation or other proceedings.

*Decree affirmed, with costs.*