KATHERINE C. BEALE and JOHN W. BEALE, Her
Husband, et al.

vs.

THE TOWN OF TAKOMA PARK and STEPHEN W.
WILLIAMS, Mayor, et al.

*Streets*: *dedication; revocation; acceptance; acts in pais; calls
in deeds; payment of taxes; mayor, no power to waive—;
water mains; not new easement in streets.   Public
improvements*: *notice and hearing; suffi-
ciency of—; Montgomery County.*

Where a party sells property within the limits of a city, and
in the conveyance bounds such property by streets, designated as
such, in the conveyance or on a map made by the city, or by
the owner of the property, such a sale implies a covenant that
the purchaser shall have the use of the streets.        p. 306

The use of streets for supplying the inhabitants of a town
with water is not an additional servitude, and the abutting
owner, although he holds the fee to the center of the street, is
not entitled to compensation for the laying of such mains, as
though for a new servitude.                              p. 307

The mere fact that the owner of a tract of land pays taxes
thereon by the acre, regardless of the fact that the tract is
marked out in streets and lots, is no evidence that the streets

are not dedicated, or that the town has not accepted them as public streets. p. 308

Acceptance of streets by municipalities may be either express, and appear of record, or it may be implied from repairs knowingly made or paid for by the authority which has the legal power to accept the street or highway, or it may be inferred from long use by the public. · p. 309

If acts, amounting to a dedication of a street, have already been done, the Mayor, in the absence of some special authority, has no power to relinquish any of the municipality's rights therein. · pp. 307-308

A town is not required to accept a dedication at once, or ordinarily within any particular time. · pp. 308-309

Where no rights of third parties have accrued, or, if accrued, have been extinguished by acquisition by the owner of the land, a dedication may be revoked. p. 309

Section 614 of Article 16 (Public Local Laws), as modified by Chapter 790 of the Acts of 1912, providing for the opening of streets, etc., in Montgomery County, applies only to cases where it becomes necessary to take private property for such public uses as are therein provided. p. 309

Article 16 of the Public Local Laws, relating to Montgomery County, is codified by Chapter 790 of the Acts of 1912; and, before entering upon any public work in said county, compliance with the character and amount of notice required by the Act of 1912 is necessary and sufficient. p. 310

Certain public improvements were undertaken in Takoma Park, a town of Montgomery County and practically a suburb of Washington; notice was given in a Washington paper having a large circulation in the town; notice by mail was also given; under the circumstances, especially as the complainants interested did not allege want of knowledge in their bill, nor offer any evidence to show it, it was: *Held,* to be fair to assume that they suffered no injury by reason of the character of the notice given and such notice was held to present no ground for holding the proceedings void. · p. 310

Md.]                         Syllabus.

The question of the sufficiency of notice to render valid the .acts of a municipality, in entering upon public improvements in Montgomery County, undertaken under Article 16 of the Public Local Code, as codified by Chapter 790 of the Acts of 1912, is considered and decided.                         p. 310

*Decided February 15th, 1917.*

Appeal from the Circuit Court for Montgomery County. In Equity.   (PETER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*W. Gwynn Gardiner* and *George H. Lamar,* for the appellants.

*Charles W. Prettyman* (with a brief by *Talbott & Prettyman*), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

The appellants filed a bill in equity to enjoin the defendants from selling or offering for sale their property situated on Grant avenue and Hancock avenue on what is known as General S. S. Carroll's Addition to Takoma Park, Md., for the enforcement of special assessments made against their lands for the extension of a water main on Grant avenue and a four-inch main on Hancock avenue, and to have said special assessment declared null and void. The defendants are the Town of Takoma Park and the Mayor and Councilmen of said town, individually.   Takoma Park was first incorporated in 1890 (by Ch. 480 of the Acts of that year), and the charter

was amended by Chapter 310 of the Acts of 1896, which, with some other amendments, constitute sections 571 to 633, inclusive, of Article 16 of the Code of Public Local Laws, title Montgomery County, as codified by Chapter 790 of the Acts of 1912.

The principal questions involved are: First, whether there has been a dedication of the streets or avenues on which the water mains were laid; and, second, whether assuming they had been so dedicated the requirements of the charter have been complied with in making the assessments and offering the properties for sale.

First: In 1893 a creditors' bill was filed to sell the lands of General S. S. Carroll, deceased. The defendants were his widow, his daughter, Katherine C. Beale and John W. Beale, her husband, who are plaintiffs in this case, and his son, Samuel S. Carroll, Jr. A decree was passed, in which Blair Lee and Charles W. Prettyman were appointed trustees to sell the property. On July 13th, 1893, the trustees reported to the Court that they had the portion of the land belonging to the late S. S. Carroll which was separated from the rest of his land by a street known as Carroll avenue, and containing about 33¼ acres, divided by a competent surveyor into squares or sections with proposed streets laid down thereon, as would appear by reference to one of the plats therewith filed; that they offered the property for sale in sections or parcels in accordance with the plat and had sold Section 1 to George N. Beale. That sale was duly ratified. A copy of the plat was filed with the bill in this case.

Carroll avenue was already in existence when the plat was made, being one of the established streets of the town. Hancock avenue is nearly parallel with Carroll avenue, and is the only street in the subdivision running in that direction laid out on the plat. While they are not strictly so, Grant, Lee, Sherman and Sheridan avenues may be said to be at right angles with Carroll avenue. They are parallel to each

other and cross Hancock avenue. There are no other streets on the plat, except Carroll, which borders on but is not a part of the tract subdivided.

On December 5th, 1894, the trustees filed another report stating that they had again offered the property at public auction, and that "The plat was shown and it was announced by said trustees that Hancock avenue as laid down on said plat would be dedicated to those purchasing lots as a right of way to and from the same, and the land included in said avenue would be deducted from the area of the parcels sold, and also that that portion of land indicated on said plat as the east half of, twenty-five feet in width, Grant avenue would be in like manner reserved as a right of way south from its intersection with Hancock avenue for the use of the lot purchasers."

They then reported a sale to George N. Beale of Section 3, showing that they had deducted the area contained in the streets. The report concluded as follows: "Your trustees also desire the assent of the Court to their dedication of the land contained in the space marked Hancock street and the east 25 feet of the width of Grant street south of Hancock street, as a right of way for those purchasing lots or parcels of the land." That sale was ratified in the usual form, and while there was no special reference to it in the order, the ratification was an approval of the division of the property. The deed of the trustees to George N. Beale for Section 1 conveyed the land to the middle of Grant street, and the one for Section 3, after referring to the plat for a description, granted to him a right of way over Hancock avenue from the line of Lee avenue to the land of H. P. R. Holt, and also a right of way over Grant avenue, lying south of Hancock avenue, and added that "the rights of way or parts of streets herein expressly set forth are the only rights of way appurtenant to the said Section 3 over the land in said cause so decreed to be sold."

By the will of George N. Beale, dated March 11, 1907, he left to his widow for life all of his property, and upon her death he left to his son, John W. Beale, certain properties including "the lots with the three (3) houses thereon on the south side of Grant avenue, Takoma Park, Maryland," and to his daughter certain properties including "all of the property with the houses thereon (back of my place called 'Mortaumonde') bounded by Lee, Hancock and Grant avenue, in Takoma Park, Maryland," and to his grand-daughter his "country house in Takoma Park, Maryland, called 'Mortaumonde,' its contents, and the attached grounds, stable and out-houses, the said grounds being bounded by Carroll, Grant and Lee avenue, on the three sides, and on the fourth by a fence running from Grant to Lee avenues." The trustees having sold other property, left by General Carroll, the proceeds of which were sufficient to pay off his indebtedness, made no more sales in that addition. Katherine C. Beale and John W. Beale, her husband, and Samuel S. Carroll made a deed of partition, by which Mr. Carroll conveyed to Mrs. Beale, by courses and distances, a tract of land which substantially corresponds with the outlines of the addition, excluding what had been sold to George N. Beale, but none of the avenues are mentioned, excepting Carroll. That deed includes Section 7, upon which was the assessment against Mrs. Beale complained of.

George N. Beale in his lifetime sold seven lots in Section 1. In all of the deeds the plat of the trustees is referred to, and in all except two Grant avenue is called for—the two lots not fronting on that avenue. Five of those deeds were made in the year 1895, one in 1896 and one in 1898. One of those lots fronting 178 feet on Grant avenue was reconveyed to said Beale in 1903, and the two lots not fronting on that avenue were also reconveyed to him that year. In his life time the town authorities had laid down a water main on Grant avenue, extending from Carroll avenue to a point 89 feet from Hancock avenue. He built a residence on Section

3, fronting on Carroll avenue, and built on the rear of that section five houses, all of which he connected, by written permission of the town authorities, with the water main laid by the town on Grant avenue. He also built on Section 1 houses which were connected with the water main by permission of those authorities. When he built his houses on the rear portion of Section 3, he applied for and obtained a permit from the town authorities, as required by the ordinances in force. It will be remembered that the water mains now in controversy are an extension of the one on Grant avenue to Hancock, and then on Hancock avenue. The extension is largely for the benefit of the people to whom the Beales sold lots and for the benefit of themselves and others to whom they may yet sell.

Katharine C. Beale and John W. Beale, her husband, were not only parties to the suit in which Carroll's Addition to Takoma Park was laid out, but the .testimony shows that Mrs. Beale superintended the drafting and printing of the plat. The tract of land was originally in woods, and before the trustees made any sale, Mr. and Mrs. Beale laid off the avenues and cut out the trees from all of them so laid out on the plat. From 1908 to 1915 they made fifteen deeds to various parties for lots on parts of Sections 4, 5, 6, 7, 8, 9 and 10, and in 1907 a deed of trust covering a lot in Section 7. The subdivision is referred to in every deed, and with possibly one or two exceptions the plat of the trustees is specifically referred to. Every avenue on the plat is referred to in the deeds, and Hancock avenue is referred to in most of them. Four deeds are for lots on the opposite side of Hancock avenue from Section 7—the one against which the assessment was made. It would be impossible for the occupants of most of the lots sold by Mr. and Mrs. Beale to reach Carroll avenue, or any other street connected with Takoma Park, or for the public to get to them, without using a part of Hancock avenue, and one of the other avenues laid out on the plat, and all of the deeds, with one exception, are for lots

which can only be reached by going over one or more of the avenues in this subdivision. Mrs. Beale built on Section 2, which fronts on Grant and Hancock avenues, five houses, laid water pipes back of them, and connected them with the water main built on Grant avenue by the municipal authorities and has since paid water rents for them. In a letter dated June 8, 1907, signed by John W. Beale, he stated that in consideration of the privilege granted him by the Mayor and Council of Takoma Park to supply water to his four new houses on Grant avenue by the extension of one supply pipe, he agreed that the water rent should be promptly paid according to the regulations of the town, granted access to the proper official of the town to inspect or cut off the water when necessary, and concluded by agreeing: "That if at any time the water main is extended on Grant avenue I agree to pay my assessed cost thereof and to connect each of the aforesaid four houses with said main by separate service pipes." Those may have been four of the houses owned by Mrs. Beale, but, if so, we do not understand her to repudiate his action, and at any rate it was a clear recognition by him of the right of the town to have the water main on Grant street, and inferentially at least to extend it on Grant street.

The evidence of the Superintendent of Public Works of Takoma Park, taken in September, 1915, was to the effect that about two years before that time the town had spent $150 on Grant avenue, from Carroll avenue to the lower part of Grant; that, about fifteen years before, water mains had been put on Grant avenue to within about 80 feet of Hancock avenue, that about 17 or 18 years before three oil lamps were installed on Grant avenue by the town, and about two years before three electric lights were installed on Grant avenue and three on Hancock avenue, that between Carroll avenue and Hancock avenue, Grant avenue has been used continually during the last fifteen years by people who live there, by grocery wagons and bread wagons; that $150 had been appropriated for work on Hancock avenue between Grant and

Sheridan about two years before he testified; that for the past five or ten years Hancock avenue between Grant and Sherman had been used by people living on Hancock avenue and some of them went out Sherman avenue to Carroll; that Grant avenue between Carroll and Hancock had been used by the public for about 21 years at least as far as King's house; that Hancock avenue had been passable for vehicles between Grant and Sheridan avenues for probably four years. The water mains on Grant avenue were paid for by the town, out of a fund for construction of the water and sewer systems raised by a general bond issue.

From what we have said there is ample to show the dedication and acceptance of the streets involved in this case. As the trustees had laid out this addition "into squares or sections with proposed streets laid down thereon" as appeared by reference to one of the plats filed, and at the sale offered the property in sections in accordance with the plat and advertisement, it might be questioned whether they had the right to convey to George N. Beale the one-half of Grant avenue with Section 1, as their deed of October 10th, 1894, purported to do, unless the Act of 1892, Chapter 684 (now Sec. 96 of Art. 21 of *Bagby's Code*) gave them such authority, but passing that by without further comment, we find that on December 5th, 1894, they filed the second report referred to above. The plat was recorded in the judgment records of the county and was referred to by George N. Beale and Mr. and Mrs. John W. Beale in making deeds. If it be conceded that there was any question about the dedication of Grant avenue by the trustees, by reason of the fact that they had conveyed one-half of it to Mr. Beale by the first sale, can there be any doubt that it was dedicated by the sales Mr. Beale made of lots on Section 1 fronting on that avenue, when taken in connection with what the trustees did? By his deeds he conveyed to one party 178 feet fronting on Grant avenue, and to three other parties 50 feet each, calling to run with the lines of that avenue. When such

acts are considered in connection with his action in connecting with the water main laid by the town on Grant avenue at the public expense, and other matters we have stated, the representatives of his estate should not be permitted to question the right to extend that main to Hancock avenue.

We have had many decisions in this State on dedications since the case of *White* v. *Flannigain,* 1 Md. 525, but the reasons there given by CHIEF JUDGE LEGRANDE are as applicable today as they were then. After saying "that where a party sells property lying within the limits of a city, and in the conveyance bounds such property by streets designated *as such,* in the conveyance, or on a map made by the city, or by the owner of the property, such sale implies, necessarily, a covenant that the purchaser shall have the use of such streets," he referred to the well-known fact that the value of property is much enhanced by the number of its feet which may bound on streets, and said, "When a sale, therefore, is made in conformity with such plan, it seems to be but plain justice to insist that the vendor, and all claiming under him, should be held bound by the lines and designations by which the property has been sold." So far as Hancock avenue is concerned, the trustees expressly provided in their second report that it should be dedicated to those purchasing lots as a right of way to and from the same, and if it be admitted that the dedication of Hancock avenue by them only extended to the first street, which was Lee avenue, that could not affect the question as against the estate of George N. Beale, as Section 3 fronts on Hancock avenue between Grant and Lee avenue.

What we have pointed out above is sufficient to show a dedication by Katherine C. Beale of the part of Hancock avenue on which Section 7 fronts, regardless of whether there was a dedication by the trustees. An inspection of the plat filed with the record, together with other evidence, shows that ten or twelve lots have been purchased and improved on the westerly side of Hancock avenue between Grant and

Sheridan avenues, four of them being on Section 8, which is just opposite Section 7, and as it could not be contended that these people would have purchased from Mrs. Beale if there had been no streets provided for, and as she has undoubtedly received increased compensation for her lots by reason of their being there, it would be a great injustice to deprive them of the comforts and benefits derived from a water system on the ground that the street has not been dedicated. The use of streets for supplying the inhabitants of a town with water is not an additional servitude, "and the adjoining owner, although he holds the fee to the center of the street, is not entitled to compensation as for as a new servitude, for it is not such, but only a proper or necessary use incident to a street in a populous place." 3 *Dillon on Mun. Cor.* (5th Ed.), Sec. 1212; 3 *McQuillin on Mun. Cor.*, Sec. 1344. "The condemnation or dedication of land for use as a street or highway in a city or town, or in close proximity thereto, carries with it the right to use the highway for the laying of gas and water pipes, since that is one of the purposes for which such highways are used, and is within the scope of the easement." *Water Co.* v. *Dubreuil,* 105 Md. 424. Takoma Park has a population of about 3,500, including about 2,000 within the corporate limits and about 1,500 in the District of Columbia.

The only grounds for contending that there was no dedication which require consideration are the letter of January 25, 1904, from the Mayor of Takoma Park to Mr. George N. Beale, in which he said he had written to Mr. Prettyman relative to Grant avenue, and he informed him that it was not public property and the Mayor suggested a dedication of it. That was written in regard to laying cement sidewalks. It might well be that the town authorities would not lay cement sidewalks unless there was a formal dedication of record, but it is not shown that the Mayor had any authority to surrender any rights that the town had, and if in point of fact such acts had been done as amounted to a dedication,

his letter could not be construed to mean that the town sur-
rendered such rights as it had to the streets. It may be that
he was not correctly advised, or it is more probable that
there was some misunderstanding as to the facts or what Mr.
Prettyman meant. It is possible that at that time it was not
thought that evidence of acceptance by the town was such as
to justify the expenditure of money on it to the extent of
putting down cement sidewalks. But it will be noticed that
the letter of the Mayor to Mr. George N. Beale was written
over three years before that of Mr. John W. Beale, and
many acts relevant to dedication and acceptance occurred
after the date of the Mayor's letter.

Then the claim that Mrs. Beale has paid taxes on the land
included in the avenues is relied on, but it is not shown how
the property is assessed. As we have seen, her brother con-
veyed the land to her as an entirety, by courses and distances.
Sometimes an owner of land which is assessed by the acre
prefers to leave the assessment in that way, instead of by
lots or subdivision. Certain it is that in many instances the
assessment for a tract is less by the acre than it would be by
lots into which it is divided. There can be no doubt that
portions of some of the avenues have been conveyed away
by Mrs. Beale, if she owned them, regardless of the effect of
the Act of 1892, but yet it is said she is assessed with the
whole. We would not be justified in holding that there was
no acceptance or intention to dedicate on account of her
paying the taxes, especially if she was simply assessed for
the land as an entirety or by the acre, and not for the lots or
sections she still owned.

What we have said above, together with additional facts
which might be mentioned, is sufficient to show an acceptance
on the part of the town. For several years it had annually
run a road scraper over and rounded up Grant avenue along.
its entire length, and Hancock avenue between Grant and
Sheridan avenues. A town is not required to accept a dedi-
cation at once, or ordinarily within any particular time.

although where no rights of third parties have accrued, or if accrued have been extinguished by acquisition by the owner of the land, a dedication may be revoked. *Clendenin* v. *Maryland Con. Co.*, 86 Md. 80. Acceptances of streets by municipalities "may be either express, and appear of record, or they may be implied from repairs knowingly made or paid for by the authorities which has the legal power to adopt the street or highway, or from long use by the public.". *Ogle* v. *Cumberland*, 90 Md. 59, 62. So, without prolonging this opinion by further discussion of this branch of the case, or referring to other facts or authorities, we are satisfied that there was a dedication and acceptance of such portions of Grant and Hancock avenues as are involved in this case.

*Second* We will now consider the objections urged against the validity of the proceedings, regardless of the question of dedication. (*a*) It is clear that section 614 of Article 16 (of the Pub. L. L.) as codified by Chapter 790 of the Acts of 1912 (being Section 31 of Chapter 310 of the Act of 1896) can have no application, inasmuch as we have determined that there was a dedication. That section only applies to a case where it becomes necessary to take private property for such public use as is therein provided for, as its terms, in our judgment, distinctly show.

(*b*) Nor can we have any doubt about the provisions of the Charter as to notice of hearings. The municipality was first authorized to assess the cost, or any part thereof, of laying water mains and sewers against the abutting property by Section 40A of Ch. 18 of the Acts of 1904 (Sec. 621 of Art. 16). Section 40B (622 of Art. 16) then provides that "Before entering upon the construction of any work of improvement specified," an ordinance shall be passed as therein stated, and provides for notices of the hearings, con- ·cluding as follows: "Owners of property not residing within the limits of said town shall be served with said notice by publishing the same three times in some newspaper of general circulation in said town, the last publication to be not

less than ten days before said hearing, and by posting a copy of said notice in a conspicuous place upon the property of said non-resident owner."

It is contended by the appellants that Section 618 of Article 16, which was Section 33 of the Act of 1896, required the notice to be as therein provided for—"once a week for three consecutive weeks in some newspaper having general circulation in said town." It would not be a compliance with Section 622 if Section 16 was only followed, for the former requires a copy of the notice to be posted on the property, as well as published in a newspaper. We are aware of no rule of construction of statutes which sustains the appellants' contention. Section 40A (621) authorizes certain work to be done, and Section 40B (622) provides that before it is begun certain things shall be done, including a hearing, and prescribes the kind of notice of hearing which shall be given. Clearly then a compliance with that provision is not only sufficient, but required.

The notice of the hearing in this case was given by publishing it three consecutive days, the last one not less than ten days before the hearing, in the *Evening Star* of Washington, which is shown by the evidence to be a newspaper of general circulation in the town, by posting copies on the properties, and also by mailing them to the last known addresses of the non-residents. There is nothing to show that in point of fact the parties did not know of the hearing. We do not mean to intimate that, if the notice required by the statute was not given, mere knowledge of the hearing would necessarily cure the omission, but as Takoma Park is practically a suburb of Washington, where we understand from the record the Beales reside, it is not likely that the appellants were prevented from attending the hearing because they did not know of it, and as they do not allege want of knowledge in their bill, or offer any evidence to show it, it is fair to assume that they have suffered no injury by reason of the character of notice given.

(*c*) Nor do we think the objection that under Section 626 there could be no assessment for the main on Grant avenue, because it is only 89 feet in length on that avenue, is well taken. It is true that Section 3 is a corner lot, but there was no assessment against Section 3 for the main on Grant avenue. The estate of George N. Beale owned a part of Section 1, along which was the extension on Grant avenue, and the assessment is against that section. The provision in Section 626 that where there is a corner lot the assessment can only be made against the frontage of the lot, and where there is an improvement on the side of the property there can only be an assessment against it when it is in excess of 100 feet, in addition to the assessment made for such improvement along the street on which the property fronts, would have prohibited an assessment against Section 3 for the extension of the main on Grant avenue, as that extension is only 89 feet in length, but that does not prevent an assessment against Section 1. It happens that the estate of George N. Beale owned on both sides of Grant avenue along the extension, but if Section 1 had been owned by some person other than the owners of Section 3, there could have been no question about the right to assess Section 1 for its share of the extension on Grant avenue, and the fact that it is owned by the same owners as Section 3 can make no possible difference.

(*d*) A number of technical objections are made in reference to the notices, ordinances and assessments. As this opinion is already longer than desirable, we will not discuss them in detail. They seem to us to be a substantial compliance with the requirements of the charter. It is true that there might have been a fuller description of the properties to be affected, but no one interested could have been misled or have failed to know that his property was intended to be made liable. Mr. Beale shows by his testimony that he was perfectly well aware of where the main on Grant avenue ended, and he had made the connections we have referred to with it. Then when the notice referred to the main on Hancock ave-

nue, abutting Sections 3, 4, 5, 6, 7 and 8, no one interested could fail to know where it was intended to lay that main. There were two ordinances and two notices of hearing because it was found that the main on Hancock avenue had to be connected with the one on Grant avenue, and hence steps had to be taken for the extension of the latter. So far as the objection that Section 623 required the notices of the assessment against non-residents to be served by publication and posting are concerned, it is shown that they were actually received by the appellants. Indeed they are filed with the bill of complaint. It is difficult to understand how the appellants could under those circumstances complain of there not having been a publication and posting. The statement of the cost of laying of the water mains and of the assessment submitted by the town treasurer to the Mayor and Council shows that the total assessments against the George N. Beale estate and Mrs. Katharine C. Beale is only a little over one-fourth of the total assessment, and that the remainder, or nearly three-fourths, is apparently assessed against owners of lots sold by the Beales. There does not seem, therefore, to be any equity in the appellants' contentions, and we find no such defects as could invalidate the proceedings. The decree must be affirmed.

*Decree affirmed, the appellants to pay the costs.*