## CHAPMAN ET UX. *v.* ROGAN ET AL.

[No. 135, September Term, 1959.]

*Decided March 15, 1960.*

*Motion for rehearing filed April 8, 1960, denied April 13, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and HORNEY, JJ.

*A. Frederick Taylor,* with whom were *Martin & Taylor,* on the brief, for appellants.

*J. Francis Ford,* for Joseph H. A. Rogan and Cecilia M. Rogan, part of the appellees.

*Carville M. Downes, Assistant County Solicitor,* with whom was *Johnson Bowie, County Solicitor,* and *William E. Ham-*

14

*mond, Assistant County Solicitor,* on the brief, for Baltimore County, Maryland, other appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is a controversy primarily between neighbors over the use of an alley, and more particularly over the stub end of the alley which constitutes a cul-de-sac. The complainants-appellants, Mr. and Mrs. J. Lee Chapman, brought this suit in equity in the Circuit Court for Baltimore County against Mr. and Mrs. Joseph H. A. Rogan and against Baltimore County as respondents for declaratory and injunctive relief. The Chapmans sought a declaration that the alley in question is a public way and they sought an injunction to prevent the Rogans from interfering with the Chapmans' use of any part of it. The Chancellor found that there had been no completed dedication of the alley to public use and dismissed the bill as against the County. He held that the Chapmans had the right to the free and unrestricted use of that part of the alley (Part A) which runs along the northern boundary of their property and extends from their western boundary to the junction of the alley with what is now a public highway at its eastern end. He also held that the Chapmans had no rights in the cul-de-sac end of the alley (Part B) lying to the west of the Chapmans' property and bounded on its northern and southern sides by the Rogan property and on the west by what is referred to as the Ekin property, which is apparently owned by a person or persons not parties to this case.

The Chapmans appeal from those portions of the decree which declared (a) that the alley was not dedicated to public use, and (b) that they had no rights in the cul-de-sac, (Part B). The decree enjoined the Rogans and those claiming under them from interfering with the Chapmans' free and unrestricted use of Part A. There is no appeal from that portion of the decree. Mrs. Rogan has died during the course of the litigation and the appellees are Mr. Rogan and the County.

The Chapman and Rogan properties are parts of a larger tract acquired at some date not shown (probably about 1913) by A. C. Montell, Sr. and wife, located on the south side of

Frederick Road west of its intersection with Belle Grove Road in the Catonsville area of Baltimore County. From time to time the Montells, Sr. conveyed various lots to others. There are four lots, each having a frontage of 100 feet, which abut on Frederick Road. These are referred to as Nos. 1, 2, 3 and 4, the numbers running from east to west. South of them are four other lots numbered (from west to east) as 5, 6, 7 and 8. Lots 7 and 8 were acquired by the Chapmans on June 12, 1923, from one Proctor and wife, who had acquired the lots by separate deeds from the Montells, Sr. in 1917. Both lots front on Belle Grove Road. Lot No. 7 binds on the south side of the alley for about 180 feet west from Belle Grove Road, and Lot No. 8 lies immediately south of Lot 7. Lot No. 1 was conveyed by the Montells, Sr. to one Peirson on October 28, 1914, and was conveyed by Peirson to its present owner, W. J. Hill, in March, 1915. Lot No. 2 was conveyed by the Montells, Sr. to Henry Bantz and wife, the present owners, in September, 1914. Lots 1 and 2 are to the north of the alley and are opposite the Chapmans' Lot 7.

Lot 3 was conveyed by the Montells, Sr. to A. C. Montell, Jr. and wife, and it was conveyed by the latter to one H. H. Flood in October, 1917. Subsequently, on April 18, 1923, title to this lot was conveyed to the Rogans. Lot 6, which lies to the south of Lot 3 and which adjoins the western side of the Chapman tract (Lots 7 and 8), is also stated to have been conveyed in October, 1916, by the Montells, Sr. to the Montells, Jr. and (apparently after one or more mesne conveyances) was conveyed to the Rogans on April 18, 1923, by the same deed which conveyed Lot 3. Lots 3 and 6 are separated, according to the descriptions in this deed, by the cul-de-sac end of the 12-foot alley here in controversy.

To the west of Lots 3 and 6 lie Lots 4 and 5. Lot 4 was conveyed by the Montells, Sr. to one Ekin on May 31, 1916; and by subsequent conveyances title to it became vested in one McNeil in 1947. Lot 5 was conveyed by the Montells, Sr. to J. J. Ekin on November 14, 1916. Its present ownership is not shown. The western end of the 12-foot alley appears to constitute the northern 6 feet of the eastern boundary of Lot 5 and the southern 6 feet of the eastern boundary

of Lot 4. The owners of Lots 1, 2, 4 and 5 are not parties to this proceeding.

When the Montells, Sr. conveyed Lots 1 and 2 to Peirson and the Bantzes in 1914, each of these lots had a depth which carried to what later became the center of the 12-foot alley. This was also true of Lot 1 when it was conveyed by Peirson to Hill in 1915. Lot 3 when conveyed to the Montells, Jr. in 1915 had a depth of 294 feet, which carried to the northern side of what later became the alley strip, but the deed did not refer to the alley. The deed conveying Lots 3 and 6 to the Rogans, in describing Lot 6, did contain a call to the south side of the alley. Whether there was such a call in any of their predecessors' deeds is not clear. The 1923 deed to Lots 7 and 8 from Proctor to the Chapmans did contain such a call. Whether or not there was a call to the alley in the 1917 deed from the Montells, Sr. to Proctor is not shown. Some deeds were not offered in evidence, and none is contained in the appendix. Data as to dates, parties and recordation of a number of deeds are shown on a plat, and some other data were furnished by the testimony of a title expert.

By a deed dated November 14, 1916, the Montells, Sr. undertook to convey to the County Commissioners of Baltimore County, a strip of land 12 feet wide and 100 feet long between Lots 3 and 4 and a strip 6 feet wide and approximately 180 feet long running along the north side of the tract later conveyed (in 1917) to Proctor as Lot 7, which is now owned by the Chapmans. By a deed of the same date, Hill undertook to convey to the County Commissioners a strip 6 feet wide and 100 feet long out of and along the rear portion of his lot (Lot 1); and by a deed dated December 8, 1916, the Bantzes similarly undertook to convey to the County Commissioners a strip 6 feet wide and 100 feet long out of and along the rear portion of their lot (Lot 2). Each of these three deeds contained a recital to the effect that the strip of land thereby conveyed formed a part of a 12-foot strip of land "now being dedicated to public use as a lane leading southwest from Belle Grove Road * * *." Each of these deeds referred to a plat "now being filed with the County Commissioners of Baltimore County." The title examiner

who testified with regard to these deeds stated that he could not locate the plat in either the land or plat records of the County.

A mortgage executed by the Rogans in 1931, covering Lots 3 and 6, and conforming to the descriptions of those lots as excluding the 12-foot strip between them, seems of no particular significance.

The deeds to the County seem ample to manifest an intention on the part of the grantors, the Montells, Sr., the Bantzes and Hill, to dedicate the strip in question to public use; but dedication requires not merely an offer, but an acceptance. *Canton Co. v. Baltimore,* 106 Md. 69, 66 A. 679, 67 A. 274; *United Finance Corp. v. Royal Realty Corp.,* 172 Md. 138, 148, 191 A. 81; *State Roads Comm. v. Teets,* 210 Md. 213, 123 A. 2d 309; *Hackerman v. Baltimore,* 212 Md. 618, 130 A. 2d 732; *Shapiro v. County Comm'rs for Prince George's County,* 219 Md. 298, 149 A. 2d 396. The appellants assert, and the appellees deny, that there has been any acceptance of dedication in this case.

The appellants' argument that the dedication of the alley was accepted, is two-pronged: first, that there were acts by the County which amounted to acceptance, and second, that there was an acceptance by public user.

We fully agree with the Chancellor that there was no acceptance by the County. Clearly, there was no formal action by the County to accept the strip (and we do not understand the appellants to contend that there was). See Title 28, Baltimore County Code (1958 Ed.), Sec. 16, which authorizes the acceptance of dedication subject to certain conditions and provides for endorsement of such acceptance on the deed and its recordation therewith. It is plain that no such acceptance was so endorsed, and it is also obvious that the 12-foot width of the strip was insufficient to meet the required 30-foot width under that section as it stood in 1916 (sec. 351 of the Baltimore County Code of 1908, as amended by Ch. 465 of the Acts of 1914). Cf. *Willis v. County Comm'rs of Baltimore County,* 173 Md. 28, 194 A. 584, in which a similar restriction as to width under sec. 352 of the same Code (Sec. 17 of Title 28 of the 1958 Ed.) against the County Commis-

sioners' adopting as a public highway a road used by the public for twenty years was considered.

If we assume (though we certainly do not decide) that notwithstanding the above provisions and restrictions and the absence of any other legislative authority for acceptance of the alley (Cf. *County Comm'rs of Baltimore County v. Collins,* 158 Md. 335, 148 A. 242), the County Commissioners or their successors could accept the dedication of this alley, we think the evidence is wholly insufficient to show that they did so. It shows no more than occasional use of the alley by police vehicles in response to calls growing out of spats between Mr. Chapman and Mr. Rogan's son-in-law who lived on Lot 6, and once by a fire engine in response to a call because of a fire in the Rogan tool shed, and one instance (somewhat in dispute) in which a County truck is said to have delivered a load of chips for use in fixing up the roadway in the alley. It seems evident that several residents, and not the County, undertook to do this work, and that one or more of them simply bought the chips and spread them in the alley. Assuming that the truck was in fact a County truck and that the County furnished the chips to the neighbors, this is, we think, not enough to show that the County undertook the repair or maintenance of the alley and thus manifested an intention to accept a dedication thereof. *Ogle v. Cumberland,* 90 Md. 59, 63, 44 A. 1015. Cf. *Kennedy v. Cumberland,* 65 Md. 514, 521, 9 A. 234; *Whittington v. Comm'rs of Crisfield,* 121 Md. 387, 393, 88 A. 232; *Beale v. Takoma Park,* 130 Md. 297, 309, 100 A. 379; *Harlan v. Bel Air,* 178 Md. 260, 265, 13 A. 2d 370.

If we approach the matter of dedication from the point of view of acceptance of the alley through public user, the appellants' case is no stronger. Unless barred by the statutory limitations above referred to as to the acceptance of a road less than 30 feet wide (a question which we find unnecessary to decide), acceptance of dedication may be effected by long public user. *Cox v. Anne Arundel County,* 181 Md. 428, 432, 31 A. 2d 179 (citing 2 Dillon, *Municipal Corporations,* § 642); *Harlan v. Bel Air, supra; Beale v. Takoma Park, supra.* But the only uses shown consisted of the occasional

visits of public vehicles above referred to, the use of the alley by cars and delivery trucks and the like going to and from properties abutting on the alley, and the use of the alley as a footway for taking trash and garbage cans out to Belle Grove Road for collection of their contents, and then for returning the cans. Since the alley is merely a dead-end way there can be no through traffic and there is no general use by the public. Those using the alley are residents of properties abutting on it or their invitees or licensees who use it for their own and the residents' convenience. Such uses, we think, do not amount to public use. See *Association of Independent Taxi Operators v. Yellow Cab Co.,* 198 Md. 181, 82 A. 2d 106, where, however, the chief question was with regard to the intention to dedicate. There is no such thing as dedication for the use of individuals; dedication must be to the public at large. *Blank v. Park Lane Center, Inc.,* 209 Md. 568, 575, 121 A. 2d 846; *Baltimore v. Gordon,* 133 Md. 150, 153, 104 A. 536; *Thomas v. Ford,* 63 Md. 346.

The fact that the alley is a cul-de-sac would not necessarily be fatal to a dedication to public use, if the offer of dedication was intended to be for public use and if it had been accepted. *Harlan v. Bel Air, supra; Sachs & Sons v. Ward,* 182 Md. 385, 35 A. 2d 161. Here, acceptance is lacking. The effect of an incomplete dedication—here an unaccepted offer to dedicate—may be quite different as regards the public and as regards the rights of other property owners. *United Finance Corp. v. Royal Realty Corp., supra; State Roads Comm. v. Teets, supra; Hackerman v. Baltimore, supra; Atlantic Construction Corp. v. Shadburn,* 216 Md. 44, 139 A. 2d 339. Such owners may acquire rights quite independent of those of the public. Usually such rights of other property owners arise where they have bought their lots on the faith of the incomplete dedication, as for example, where the owner of an entire tract prepares a plat of his land showing streets and lots abutting thereon and then sells lots by reference to the plat. The present case does not exactly fit that usual plan. For some reason not explained, the appellants did not trouble themselves to put into the record and appendix the deed from the Montells, Sr. to Proctor, the predecessor

in title of the Chapmans. Even giving the appellants the benefit of the doubt arising from their failure to make a complete record and assuming what they have not shown—that the deed from the Montells, Sr., to Proctor used the alley as a call (as did the deed from Proctor to the Chapmans)—and without laying stress on the facts that no recorded plat was ever proved, and that no private, unrecorded plat was shown to have been known to Proctor or to the Chapmans, or even to have existed, what rights could the Chapmans have acquired by virtue of the incomplete attempted dedication?

Whatever these rights may be rests upon evidence showing that each of the strips of land which the Montells, Sr., the Bantzes and Hill undertook to convey to the County "forms part of a twelve foot strip of land now being dedicated to public use as a lane leading southwest from Belle Grove Road * * *." This language, we think, amounted to a grant of a right of way over the alley for ingress and egress to and from Belle Grove Road, the nearest open street or road. (In 1916 it was apparently a private way connecting with a public road. It has been a public road, according to the testimony, since about 1940.) No express grant to the Chapmans or their predecessors in title of a right to use the alley is shown. The case of *Bump v. Sanner*, 37 Md. 621, relied on by the appellants is, therefore, not applicable. *Douglass v. Riggin*, 123 Md. 18, 90 A. 1000, also cited by the appellants does not appear to aid them. There an injunction to prevent the obstruction of a way used by the plaintiff for access to a street was upheld. No such situation exists here. The Chapmans have no need to use the cul-de-sac end of the alley to reach a public road. (Their only possible uses for the stub end suggested at the argument were utterly trivial.) To reach a public road is all that we think the Chapmans would be entitled to by virtue of the reference to the alley in their deed, assuming that there was a like reference to it in the deed from the Montells, Sr. to Proctor, the Chapmans' grantor. *Moale v. Baltimore*, 5 Md. 314; *Hawley v. Baltimore*, 33 Md. 270; *Canton Co. v. Baltimore, supra; Atlantic Construction Co. v. Shadburn, supra.*

No question is presented on this appeal with regard to

Rogan's claim of title by adverse possession to the stub end of the alley where his tennis court backstop, which seems to have been at the bottom of the controversy with Chapman, has been constructed.

The decree appealed from will be affirmed.

*Decree affirmed, with costs.*