MARION WELKER ET AL. *v.* WALTER G. STROSNIDER ET AL.

[No. 798, September Term, 1973.]

*Decided August 9, 1974.*

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*Arthur S. Drea, Jr.*, with whom were *Meatyard & Carlin* on the brief for appellants.

*George Seymour Morgan* for appellees.

MOYLAN, J., delivered the opinion of the Court.

At issue is the decision of Judge H. Ralph Miller, sitting as a chancellor in equity in the Circuit Court for Montgomery County, in granting to the trustees of the Silver Spring Church of Christ, appellees herein, their petition for the abandonment of a part of Long Branch Parkway. The appellants are four nearby property owners, representing in effect the general interests of the Sligo-Branview Community Association, although one of the appellants, George Stone, happens to be an abutting property owner to the abandoned parcel. Stone presses, however, no claimed deprivation peculiar to the particular situation of an abutting owner and his otherwise special status has, therefore, no bearing on this appeal.

In the Indian Spring Park subdivision of Silver Spring, Franklin Avenue runs, for that part of its course here relevant, on an essentially southwest-northeast axis, curving gradually more to the northward as it extends eastward. At a "lazy Y" intersection, a "paper street," Long Branch Parkway, forks theoretically off to the southeastward. The Church of Christ sits on its triangular lot in the notch of the "Y," with the actual Franklin Avenue to its northwest and the phantom Long Branch Parkway to its southwest. Even on paper, the "paper street" runs for no more than a block. Deadending into its midpoint, from the southwestward, is Walden Road, a residential street. Deadending into its southeastern extremity is Mintwood Street, another residential street. Both Walden and Mintwood would have had vehicular access to and from Franklin Avenue (as well as to each other) had Long Branch Parkway ever been cut

through. No one is urging that that be done, now or ever. Also situated where Mintwood Street deadends into the undeveloped "paper parkway" is a small, narrow park.

The record does not reveal precisely when or by whom the projected roadbed was dedicated to the County. There is no dispute, however, over the fact that Long Branch Parkway was dedicated for the development of a public road but was never developed as such. The right of the Church of Christ, as an abutting property owner, to petition for the abandonment is not in question. *Shapiro v. County Commissioners*, 219 Md. 298, 149 A. 2d 396 (1959).

That part of the Church property nestled in the fork of the "Y" was its parking lot. It proved inadequate and the Church sought to expand its off-street parking in order to reduce the hazards of cars parking on Franklin Avenue and parishioners crossing over Franklin Avenue. In April, 1971, the Church extended its parking lot by laying a strip of gravel, 30 feet in width, over one-half of the right-of-way designated for Long Branch Parkway. After several complaints had been lodged, the County Attorney for Montgomery County, David L. Cahoon, wrote to the Church on June 7. He informed them that "[c]ounty law does not permit a dedicated public right of way to be used for any private purpose, including a church parking lot" and that any graveling would have to be removed. He also informed the Church, however, that "[t]here is a procedure for abandoning dedicated but unused streets and roads through action of the Circuit Court. Successful action results in one-half of the roadway reverting to the respective abutting property owners. This would be necessary prior to any use of such right of way." In anticipation that such a course of action might be followed, Mr. Cahoon went on to point out certain zoning ordinances dealing with parking lot design requirements, particularly one dealing with screening.

Acting upon the advice from the County Attorney, the Church, on September 27, 1971, petitioned for the abandonment of 12,207 square feet of land, representing one-half of that portion of the once-projected Long Branch Parkway which abutted the Church property. The petition

recited that the subject property had "never been improved and used as a public street by the public or private individuals"; that "it would be to the benefit of [the] petitioners and will in no way damage any person, corporation, or public body to have the street abandoned"; that "it is understood that said part of Long Branch Parkway is not required for any public purpose by the Montgomery County Council, the Washington Suburban Sanitary Commission, the Maryland-National Capital Park and Planning Commission, or by any other public agency, and that said portion of Long Branch Parkway has never been used as a public way or street" and that the aforementioned agencies "are expected to file their consents in this proceeding."

On November 19, 1971, the Washington Suburban Sanitary Commission filed its "Recommendation (Conditional Consent)" to the abandonment. Several sewer lines ran beneath the property and the Sanitary Commission sought to be assured that all necessary easements and rights-of-way for maintenance, repair, replacement, etc. were not jeopardized. Such assurances were appropriately given by the Church and are not here in issue.

The proposed abandonment was then duly advertised and a certificate of publication was filed on February 22, 1972. The initial position of the Sligo-Branview Community Association was one of politic neutrality. Both "homeowners and church elders have individually addressed" one of the "regular meetings." The Association gave "the two groups an opportunity to work out their differences without forcing the Association to take a formal vote on the issue." When two Association-sponsored efforts at mediation failed, the Association voted to oppose the abandonment.

On August 25, 1972, the Association filed a letter with the Clerk of the Court, asking "to be recognized as a friend of the court in the role of an interested and intervening third party." It pointed out that the subject property lay "within the boundary lines of our association." The most salient point then made was that the "subject property has been and continues to be used by the public as a pedestrian and

bicycle access to [Franklin] Avenue and to certain properties owned and maintained as park land by the Maryland-National Capital Park and Planning Commission." The present appellants filed their Opposition to Petition for Abandonment on October 9, 1973. Their position parallels that taken earlier by the Community Association, whom they now quite clearly represent.

On November 27, 1972, the Maryland-National Capital Park and Planning Commission filed its opposition to the abandonment. Its position, however, was based not upon existing or past use but upon future possibilities. It "concluded that the full width right-of-way should be retained in public ownership for public use either as a public right-of-way or as an extension of the Long Branch Park in order to provide necessary green space and function as essential public pedestrian access to other public facilities in the area."

On October 30, 1973, Montgomery County filed its Conditional Consent to Abandonment. It insisted 1) that all necessary easements and rights-of-way be retained by the Washington Suburban Sanitary Commission, 2) that the Church be required to plant a hedge, six feet in height, on its side of the property in order to screen the parking lot from adjacent residential properties, and 3) that the Church grant an easement of five feet in width from the former center line of Long Branch Parkway to the Maryland-National Capital Park and Planning Commission in order to provide a width of 35 feet (as opposed to only 30 feet) for both a public pedestrian walkway from Franklin Avenue into the interior streets and to Long Branch Park and also "to provide for an extension of Long Branch Park in order that complementary green space may be reserved for the enjoyment of neighboring residents and the general public." The County then indicated further that it would be willing to abandon the other (southwestern) half of the dedicated Long Branch Parkway right-of-way to the Maryland-National Capital Park and Planning Commission for the above-stated purposes.

On November 2, 1973, Judge Miller signed an order

granting the requested abandonment to the Church subject to the conditions outlined in the Conditional Consent of Montgomery County.

The appellants contend initially that the Circuit Court had no jurisdiction over the subject abandonment. They base the contention upon Montgomery County Code 1972, Section 50-15, which provides, in pertinent part:

> "When the plats are so recorded, those portions of lands designated on the plats as drainage ways, paths, walks, streets, roads, avenues, lanes, alleys, and public parks or squares, or other areas dedicated to public use shall be and the same are hereby declared to be forever dedicated to public use, and shall not thereafter, on any pretext whatsoever, be altered or taken for private use; . . . provided further, that *the maker of any such plat, his heirs or assigns, shall have the right to apply by petition to the circuit court for the county for the leave to abandon the subdivision of lands so made by him,* or any part thereof, and reconvert the same into one tract or parcel; *provided the area to be abandoned has not been used by the general public or accepted for maintenace by the county* and *the court,* if convinced upon such proof, and after such notice by publication or otherwise, or as it shall direct, that no damage can be in anywise sustained by the general public or persons other than the petitioners, *shall have power to pass an order authorizing and empowering such petitioner to abandon* such subdivision either in whole or in part; . . . *provided, however, that this section shall not apply to the abandonment of* drainage ways, *streets,* roads, avenues, lanes or alleys *which have been used by the public or accepted for maintenance by the county,* in which case proceedings for abandonment shall be brought under article V of chapter 49 of this Code." (Emphasis supplied).

The complementary section to the last proviso is Montgomery County Code 1972, Section 49-67, which provides:

"Applicability of article [the article dealing with the jurisdiction of the County Council over the abandonment of road and drainage rights of way]; exceptions. *This article shall apply to all public roads and storm drainage rights of way, except* (1) state roads and storm drainage rights of way, and (2) *public roads* and storm drainage *rights of way which have been dedicated to public use by a subdivision plat and which have not been used by the public* or accepted for maintenance by the county." (Emphasis supplied).

As the appellants freely acknowledge, there "is no dispute in the subject case that the subject property is a dedicated public road on a recorded subdivision plat but has never been accepted for maintenance by the county." The sole question governing jurisdiction is whether the dedicated property has "been used by the public" within the contemplation of Section 50-15 and Section 49-67. If the dedicated roadbed has been used by the public, the appellants are right that the Circuit Court does not have jurisdiction under Section 50-15 and that the County Council does have jurisdiction under Section 49-67. If, on the other hand, the dedicated roadbed has *not* been used by the public, then the appellees are right that the Circuit Court does have jurisdiction under Section 50-15 and that the County Council does not have jurisdiction under Section 49-67.

It is clear from the combined statements of fact and from the various allegations in the pleadings that the dedicated roadbed was never used by the public "as a road," just as it is clear that it was never, as a road, "accepted for maintenance by the county." The appellants predicate their entire jurisdictional position upon their allegation that it was "used by the public as a pedestrian and bicycle access" and "as an extension of the Long Branch Park."

Accepting the allegations as true, we hold that this does

not constitute "use by the public" for purposes of conferring or withholding jurisdiction over the requested abandonment of land dedicated for use as a road and then not used as such. We read "used by the public" and "accepted for maintenance by the county" as alternative means to a single end and not as separate means to quite different ends. When land is dedicated for use as a road, the purpose is consummated either formally by the county moving in bulldozers, graders and steamrollers or informally by the general public's driving of cars and trucks over the right-of-way. We do not think that the law contemplates a dedicated roadbed being "accepted for maintenance by the county" by the county's erection of an office building on the site. Neither do we think that the law contemplates a dedicated roadbed being "used by the public" by various members of the public using the vacant land to play an informal game of softball, to walk their dogs or to have a picnic. The use contemplated in both instances is use "as a road."

The only authority cited by the appellants for their proposition that the use by bicyclists or pedestrians of the subject land as a shortcut constitutes a public use within the contemplation of the statutes is a peripheral fact from *Cooper v. Sanford Land Co.*, 224 Md. 263, 266, 167 A. 2d 602 (1961), not even amounting to a dictum. In that case, the Court of Appeals found it necessary to remand for a further evidentiary hearing because of the inadequacy of the record to establish or to negate an abandonment or even to establish or negate the original dedication. In remanding the case, the Court said, at 224 Md. 266-267:

> "It will be noted that although the road was alleged to be a public one, no testimony, except the bare calls in the deeds, was offered to establish the allegation as a fact. The appellants contend that there was a 'dedication' of the road by reason of the calls in the several deeds, yet no attempt was made to show who made the supposed dedication, nor who was the owner or owners of the properties abutting the road at the time of dedication. . .

"The chancellor, apparently, decided that the overgrown condition of the road and the size of several trees in the roadbed conclusively established an abandonment. These facts, of course, could be considered on the question of abandonment, but we do not deem them conclusive (in the instant case, there was no evidence of the kind of trees involved, nor their probable age). *There was some evidence that the purported roadbed had been used as a bridle path.* This Court has held that two elements are necessary to show an abandonment, namely, an intention to abandon, and an overt act, or an omission to act, by which such intention is carried into effect; and mere nonuser, of itself, is not any evidence of abandonment, unless it continues for the period of limitations of actions to recover the right or property. . . . In the condition that the case reaches us, we are unable to decide either the question of dedication, or abandonment." (Emphasis supplied).

The appellants base their entire theory of the case upon the single sentence underlined above. So slender a reed, a gratuitous recital of fact thrown in for the sake of completeness, at worst, and an uncritical dictum based upon neither authority nor analysis and in no event addressed to the central issue in the case, at best, will not support the weight of the appellants' proposition. Peripheral recitals are not precedent at the common law.

We are persuaded that the clear thrust of the law is in quite the opposite direction. In *Town of Glenarden v. Lewis*, 261 Md. 1, the Court of Appeals was dealing with public use not as a jurisdictional peg, as in the instant case, but as one of the means to accept the offer of a dedicated street. In finding that there had been no public use, Judge Digges said for the Court, at 6-7:

"The appellant's final argument involves acceptance by long public user. However, the validity of this contention is completely

undermined by a series of concessions the town makes both in its brief and at oral argument. To begin with, the appellant conceded in the trial court that Polk Avenue was only a 'paper street, not in use.' In oral argument in this Court, appellant's counsel stated that the road was grown up with underbrush but that there might have been some pedestrian activity. While it is true that 'long public user' is not subject to a strict formulistic evaluation, slight evidence of walking on the road does not constitute acceptance by public use.

. . .

To exhibit public use, more than merely nominal utilization must be shown. 'What is required is for the user to be continued for so long a time as will establish a clear intention on the part of the public to accept.' . . . *North Beach v. Land & Imp. Co.*, 172 Md. 101, 116, 191 A. 71 (1937); *Garrett v. Gray*, 258 Md. 363, 266 A. 2d 21 (1970)."

It is very clear that the use of a disputed area merely by the abutting landowners—use for ingress and egress, use for parking, use for recreation, or any combination of these and similar uses—does not constitute public use. In *Chapman v. Rogan*, 222 Md. 12, 158 A. 2d 626, Chief Judge Brune said for the Court, at 222 Md. 19:

"Those using the alley are residents of properties abutting on it or their invitees or licensees who use it for their own and the residents' convenience. Such uses, we think, do not amount to public use."

To a similar effect was *State Roads Comm. v. Teets*, 210 Md. 213, 123 A. 2d 309, at 210 Md. 222-223:

". . . the evidence shows no public use of the strip now in dispute at any time. Trees have grown up in the strip, shrubbery has been planted and, by what seems to have been tacit, common consent, each lot owner has used that portion of the strip between his lot and the State Road as if it were his own—as

a means of access to the public road, as a parking place, as a recreation area, or as a combination of two or more such purposes."

It is clear to us that when the Montgomery County Code allowed jurisdiction over an abandonment to turn upon the question of whether the subject land "has . . . been used by the general public or accepted for maintenance by the county," it contemplated by that language the two traditional and alternative means of accepting an offer to dedicate. The analysis of public use in that latter context, in *Mt. Sinai v. Pleasant Manor*, 254 Md. 1, 6, 253 A. 2d 915, quoting from *Thomas v. Ford*, 63 Md. 346, is, therefore, quite apposite in analyzing the meaning of the words in the jurisdictional context:

"It is certainly a settled doctrine in this State that public roads or ways of any kind can only be established by public authority, or by dedication, or by long user by the public, which, though not strictly prescription, yet bears so close an analogy to it that it is not inappropriate to apply to the right thus acquired the term prescriptive. Hence the existence of a public way may be established by evidence of an uninterrupted user by the public for twenty years; the presumption being that such long continued use and enjoyment by the public of such way had a legal rather than an illegal origin."

The appellants' theory in the present case, even if it had been established by proof, simply does not add up to general public use.

The appellants' second and final contention is that they were denied due process of law when they were denied a hearing, at which they allegedly would have offered evidence to prove bicycle and pedestrian use. In view of our holding that the alleged fact, even if true, would avail them naught, the question is moot.

*Judgment affirmed; costs to be paid by appellants.*